OPINION
This appeal emanates from the Lake County Court of Common Pleas. Appellant, Richard Hayden, a.k.a. "Snoop" Hayden, appeals his conviction.
On September 4, 1998, the Lake County Grand Jury secretly indicted appellant on one count of murder, in violation of R.C.2903.02(B). On September 8, 1998, appellant entered a plea of "not guilty" to the charge. Appellant's attorney filed a motion for a bill of particulars on September 22, 1998. On October 8, 1998, in response to that motion, appellee, the state of Ohio, stated that the death of Ollie Gipson ("the victim") occurred as a proximate result of appellant committing or attempting to commit a felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(1). The trial commenced on January 26, 1999. Prior to any testimony being heard, appellant made oral objections, which the trial court overruled.[1] Thereafter, appellant waived his right to a trial by jury and a bench trial was held.
The evidence at trial revealed that on August 23, 1998, appellant and some of his friends severely beat up the victim. The victim received several blows to the head, which eventually led to his death.
Barbara Adeyemi "(Adeyemi") lived in the apartment complex, the Argonne Arms, where the incident took place. She testified that on August 23, 1998, around 2:30 a.m., she heard some noise and went to her bedroom window. She noticed some teenagers arguing and observed a big guy get out of a car and hit someone, later identified as the victim. The victim fell to the ground and a big guy, whom she identified as appellant, along with two other men, stomped on the victim and beat him. Specifically, she saw the three men "stomping [on] him, and jumping on him, and kick[ing] him * * *." She observed that appellant "was kicking him[,] was stomping him, like everything he had, in his head and upper body part." The victim was not moving and Adeyemi thought he was dead. Then she heard a shot and saw a flash. The three men returned to their cars and drove away. At that point, Adeyemi noticed a sheriff, and she screamed for him to stop the cars. That night, Adeyemi prepared a statement for the police. She also made a subsequent statement a couple of days later at the police station.
Jamal Russell ("Russell") was also called to the stand and related that on August 22, 1998, he, appellant, Keith Bowles ("Keith"), and Damon Anderson ("Damon") headed for Painesville to attend a party given by Damon's brother. After the party was over, the four men left and as they were driving, they ran into appellant's cousin, Choc. Apparently, Choc had informed them that he and his friends had been beaten up by a group of guys. According to Russell, this infuriated everybody. Russell noticed that Choc and his friends had sustained various injuries. Russell recalled that one of the men in his group suggested that they head to the Argonne Arms. Once they arrived at the apartment complex, Russell saw "a black male man with a handgun running around." As they drove further into the apartment complex, he observed "another black man with a rifle." He also saw Damon's brother talking with the man carrying the rifle. They then heard a gunshot and Russell, appellant, and Keith commented to Damon that his brother had been shot.
Appellant proceeded to drive in the direction of the gunshot. The four men then saw another male, later identified to be the victim, approaching the auto saying, "wha'sup, wha'sup," and he had his hand in his shirt. As the victim got closer to the car, Russell stated that it was apparent that the victim did not have a gun. Keith and Damon proceeded to exit the vehicle and hit the victim. Appellant also got out of the car and after Keith and Damon finished kicking the victim, Russell saw appellant stomp on the victim's head twice. Once the victim hit the ground, Russell testified that he did not see the victim move. All four men re-entered the automobile and drove away from the scene.
On cross-examination, Russell stated that appellant never said he was going to kill anyone, nor did he say he was going to kill the victim. Moreover, according to Russell, none of the men discussed killing anybody and none of them carried any weapons.
Dr. Frank P. Miller, III ("Dr. Miller"), a deputy coroner and forensic pathologist for the Cuyahoga County Coroner's Office, related that he performed the autopsy on the victim. An external and internal examination revealed that the injuries the victim suffered consisted of "a laceration, a cut over the right eye, and there [was] an abrasion, a scrape and bruise, or abrasion, contusion over the right forehead, and there [were] hemorrhages in layers of the scalp on the right side of the head. There [was] also a black eye." According to Dr. Miller, the victim's death was caused by a "blunt impact to the head with results to brain injuries." Further, he stated that the "skull fracture to the base of the skull * * * [was] the result of a large amount of force conveyed by a vital blow or more than one blow." He added that "these external and internal injuries [were] consistent with an individual who may be laying on the ground and kicked."
Detective Robert Sayer ("Det. Sayer") of the Painesville Police Department testified that he investigated the victim's murder. A few days after the incident occurred, Det. Sayer interviewed Damon, Russell, and appellant. He obtained all three of their written statements. Damon's version of the events that occurred on August 23, 1998, was essentially the same as Russell's testimony. Det. Sayer's Mirandized appellant and then conducted an interview. Appellant's account of the events was also very similar to Russell's rendition. Moreover, appellant admitted that he grabbed the victim by the back and tripped him. After the victim fell to the ground, appellant, Damon, and Keith started kicking and stepping on him. Keith then checked to see if the victim had a gun, but no gun was found. Thereafter, Damon and Keith returned to the car and appellant stated that he kicked the victim "once or twice more as he laid on the ground." Based on appellant's statement, Det. Sayer placed appellant under arrest for the murder of the victim.
At the conclusion of appellee's case-in-chief, appellant moved for a judgment of acquittal pursuant to Crim.R. 29, which the trial court overruled.
Appellant testified in his own behalf. His testimony was very similar to Russell's. However, he stated that none of the men went to the apartment complex to kill anyone. He indicated that he had never seen the victim prior to the night of the incident. He recalled that Damon was the first one out of the auto when the victim approached it, and then Keith followed. They were punching the victim and then appellant exited the car and tripped the victim. Appellant explained that after he tripped the victim, he, Damon, and Keith began kicking the victim. He mentioned that he kicked the victim near the shoulder area. Subsequently, Keith checked to see if the victim had a gun. After discovering that there was no gun, Keith and Damon returned to the car and appellant kicked the victim a couple more times. Appellant denied kicking the victim in the head. He did testify that he wanted to go to the apartment complex to get revenge for what was done to his cousin. At the close of appellant's case, appellant renewed is motion for acquittal, but the trial court overruled it.
On January 28, 1999, appellant was found guilty of murder and the trial court determined that appellant did not act while he was under the influence of sudden passion or in a fit of rage. On February 2, 1999, appellant was sentenced to serve an indefinite term of imprisonment of fifteen years to life, with credit for one hundred fifty-six days of time served. Appellant timely filed the instant appeal and now asserts the following as error:
 "[1.] The trial court erred to the prejudice of [appellant] when it failed to dismiss the felony-murder charge due to its being in violation of [appellant's] due process rights as guaranteed by the Ohio and United States Constitutions.
 "[2.] The trial court erred to the prejudice of [appellant] when it failed to dismiss the felony-murder charge due to its being in violation of [appellant's] equal protection rights as guaranteed by the Ohio and United States Constitutions.
 "[3.] The trial court erred to the prejudice of [appellant] when it failed to dismiss the felony-murder charge due to its being in violation of [appellant's] rights against cruel and unusual punishment as guaranteed by the Ohio and United States Constitutions.
 "[4.] The trial court erred to the prejudice of [appellant] when it denied his motion for acquittal made pursuant to Crim.R. 29(A).
 "[5.] The trial court erred to the prejudice of [appellant] when it returned a verdict of guilty against the manifest weight of the evidence."
In appellant's first assignment of error, he claims that the trial court erred by failing to dismiss the felony-murder charge as it was in violation of his due process rights as guaranteed by the Ohio and United States Constitutions.
R.C. 2903.02(B), which came into effect on June 30, 1998, provides that:
 "(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."
 Felonious assault is defined in R.C. 2903.11(A)(1), which states that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *."
Appellant argues that with the passage of the foregoing murder statute, the state of Ohio created a new felony-murder statute that ignores the limitations of the independent felony rule, which is unconstitutional because it "violates the independent felony rule by allowing crimes such as felonious assault, which are not independent of the conduct which kills, to be the basis upon which the murder is charged." Further, appellant asserts that the felony-murder statute is unreasonable because it "fails to reflect the independent felony limitations of the felony-murder doctrine, thus allowing for the application of a murder charge onto conduct that historically would have fallen under Ohio's involuntary manslaughter statute."
We note that all legislative enactments enjoy a strong presumption of constitutionality. State v. Thompkins (1996),75 Ohio St.3d 558, 560; Arnold v. Cleveland (1993), 67 Ohio St.3d 35,38. Moreover, legislation will not be invalidated unless the challenger establishes that it is unconstitutional beyond a reasonable doubt. Thompkins, 75 Ohio St.3d at 560; Arnold,67 Ohio St.3d at 38-39. In Thompkins, 75 Ohio St.3d at 560, the Supreme Court of Ohio also stated that:
 "Pursuant to its police powers, the General Assembly has the authority to enact laws defining criminal conduct and to prescribe its punishment * * * [L]aws passed by virtue of the police power will be upheld if they bear a real and substantial relation to the object sought to be obtained, namely the health, safety, or general welfare of the public, and are not arbitrary, discriminatory, capricious or unreasonable. * * * The federal test is similar. To determine whether such statutes are constitutional under federal scrutiny, we must decide if there is a rational relationship between the statute and its purpose."
Hence, appellant must overcome the presumption of the constitutionality of the statute, which he has failed to do. Also, appellant has not established that the statute is unconstitutional beyond a reasonable doubt.
Under the common law approach, R.C. 2903.02(B), does not relieve the state of the burden of proving mens rea simply because the intent to kill is conclusively presumed so long as the state proves the required intent to commit the underlying felony. At common law, "malice aforethought" was ascribed to a felon who killed another in the perpetration of an inherently dangerous felony such as rape, robbery, or burglary. Specifically, under the common law rule, the United States Supreme Court recognized that "prosecutors do not need to prove a culpable mental state with respect to the murder because intent to kill is conclusively presumed if the state proves intent to commit the underlying felony." Hopkins v. Reeves (1998), 524 U.S. 88, 91-92. Thus, several states have found that felony-murder statutes pass constitutional muster regarding the mens rea issue because those statutes require the state prove the intent of the underlying felony.[2] Jones v. State (1977), 568 P.2d 837, 844; see, also, State v. Ragland (1988), 420 N.W.2d 791, 793-794; Perkins v.Grammar (C.A.8, 1988), 838 F.2d 294, 295-296.
In the case at bar, the nexus between the underlying felony and the homicide was apparent. Appellee presented sufficient evidence to establish that appellant knowingly and repeatedly stomped on the victim's head, which eventually led to the victim's death. Hence, the appellee satisfied the mens rea for murder by proving the intent of the underlying felony, felonious assault. Further, appellant has cited no authority for the proposition that a state cannot have two forms of a felony murder statute. Therefore, it is our view that it is a legislative prerogative to provide what form or forms of the felony-murder rule it wishes to implement as long as the statutes enacted are otherwise within constitutional parameters. Accordingly, appellant's first assignment of error lacks merit.
As appellant's second and third assignments are interrelated, they will be addressed in a consolidated manner. In those assignments, appellant contends that the trial court erred by failing to dismiss the felony-murder charge as it was in violation of appellant's equal protection rights and rights against cruel and unusual punishment as guaranteed by the Ohio and United States Constitutions.
We note that neither of these constitutional issues were raised at trial, and they are asserted for the first time in this appeal. Pursuant to State v. Awan (1986), 22 Ohio St.3d 120, syllabus, the "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which is apparent at the time of trial, constitutes a waiver of such issue * * * and therefore need not be heard for the first time on appeal." See, also, State v. Gordon (1971), 28 Ohio St.2d 45, paragraph two of the syllabus; State v. McDonald (1972), 32 Ohio App.2d 231,236. Hence, we decline to exercise our discretion to consider these constitutional issues for the first time on appeal. Appellant's second and third assignments of error are overruled.
As appellant's fourth and fifth assignments of error raise questions regarding the adequacy of the evidence, they will be addressed in a consolidated fashion. In his fourth assignment of error, appellant alleges that the trial court erred by denying his motion for acquittal pursuant to Crim.R. 29 because appellee failed to prove beyond a reasonable doubt that appellant committed felonious assault, the underlying felony needed to support murder. Appellant contends that appellee failed to present sufficient evidence, beyond a reasonable doubt, that appellant was guilty of murder. In his fifth assignment of error, appellant claims that his conviction was against the manifest weight of the evidence.
The Supreme Court of Ohio established the test for determining whether a motion for acquittal is properly denied inState v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus, which states:
 "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state. As the court stated in State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, 10-11:
 "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 "`"(* * *) (T)he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence.
* * *"'
 "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' * * * `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' * * *.
 "On the other hand, `manifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense." (Emphasis sic.)
 Hence, a reviewing court must look to the evidence presented to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt. State v. March (July 16, 1999), Lake App. No 98-L-065, unreported, at 7. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Furthermore, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997), 79 Ohio St.3d 421, 430.
Applying this standard here, appellee was required to offer sufficient evidence to prove that appellant committed murder pursuant to R.C. 2903.02(B), which provides:
 "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."
Appellee charged appellant with felonious assault as the underlying felony, which is defined in R.C. 2903.11(A)(1) as follows:
 "No person shall knowingly do either of the following:
 "(1) Cause serious physical harm to another or to another's unborn; * * *."
Knowingly is defined in R.C.2901.22(B) as:
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
The record in the instant case reveals evidence which, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find all the essential elements of felonious assault beyond a reasonable doubt. Appellant and his friends began punching and kicking an unknown man, the victim, whom they thought was carrying a weapon and may have been responsible for attacking appellant's cousin. However, even after they realized the victim was unarmed, they continued to attack him and cause him physical harm. Appellant admitted that he kicked the victim even after discovering that the victim was not carrying a gun. Adeyemi stated that she observed appellant stomping and kicking the victim in the head and the upper part of the body. Further, Russell corroborated Adeyemi's testimony and added that appellant stomped on the victim's head at least twice. Moreover, Dr. Miller revealed that the injury to the brain that the victim suffered was the result of a blunt impact to the head. Accordingly, appellant's conviction was supported by sufficient evidence with respect to the fourth assignment of error.
In the fifth assignment, appellant argues that the verdict was against the manifest weight of the evidence. Though evidence may be sufficient to sustain a guilty verdict, the issue of manifest weight requires a different type of analysis. Schlee,supra, unreported, at 11. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. A reviewing court, when addressing whether a verdict is against the manifest weight of the evidence, reviews:
 "`[T]he entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * *'" State v. Davis (1988), 49 Ohio App.3d 109, 113.
In the case sub judice, there was ample evidence introduced at trial to support the conviction. Appellee presented competent, credible evidence that appellant knowingly caused serious physical harm to the victim. The character of this evidence was not incredible, and the trial judge did not lose his way. There was ample direct evidence presented by an eyewitness, participants, the coroner, and appellant himself, most of which was uncontradicted, that appellant assaulted the victim by kicking and stomping on his head, which resulted in his death. Again, appellant admitted that he repeatedly kicked the victim, and thus, knowingly caused serious harm to the victim, which was the proximate cause of his death. Thus, the trier of fact could reasonably conclude that appellant committed a felonious assault. Hence, the verdict was not against the manifest weight of the evidence. Since the evidence introduced at trial was sufficient as a matter of law, and the conviction was not against the manifest weight of the evidence, we affirm appellant's conviction. Therefore, appellant's fourth and fifth assignments of error are without merit.
For the foregoing reasons, appellant's assignments of error are not well-taken. Accordingly, the judgment of the Lake County Court of Common Pleas is affirmed.
 __________________________________ PRESIDING JUDGE DONALD R. FORD
NADER, J., O'NEILL, J., concur.
[1] First, appellant's attorney argued that the amended version of R.C. 2903.02 took a manslaughter charge "and made it into a murder charge." Hence, appellant's attorney claimed that appellant was "charged with a murder and involuntary manslaughter containing the same elements." Secondly, appellant's attorney alleged that one of the elements of the new murder statute was an offense of violence of the first degree or second degree. Thus, the court had to instruct the jury as to whether the offense was a felony or not. After hearing both arguments, the trial court denied appellant's objections. Neither objection seemed to have a constitutional basis.
[2] Only a few of the cases with the foregoing view have been listed, but several states have the same view, which include Wyoming, Iowa, Nebraska, Arizona, New York, Indiana, Massachusetts, Colorado, Montana, Washington, North Carolina, West Virginia, Maine, Maryland, and Arkansas.