# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1427

_____

Henry B. Tatum,                   *
                            *
         Appellant,        *
                            *
                            *   Appeal from the United States
     v.                     *   District Court for the
                            *   Western District of Missouri.
Dave Dormire; Jeremiah Nixon,  *
Attorney General of the State of  *
Missouri,                   *
                            *
         Appellees.        *

_____

Submitted:  June 14, 1999
Filed:  July 26, 1999

_____

Before BOWMAN, HEANEY, and FAGG, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Henry B. Tatum, who was convicted by a jury and sentenced to life imprisonment for first degree murder, second degree murder, and armed criminal action in violation of Missouri state law, appeals from the order of the District Court[1] denying Tatum's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Tatum argues the District Court erred in denying Tatum's claim that the Missouri trial court violated

_____

[1] The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

Tatum's due process rights when it refused to submit jury instructions proffered by Tatum. We affirm.

We begin with the facts of the crimes for which Tatum was convicted. Tatum resided at the Kansas City apartment of Marcia Rainey, with whom Tatum had a romantic relationship. Rainey's two-year old daughter, Whitney, also lived at the apartment. In the early-morning hours of May 5, 1989, Tatum returned to the apartment building after being out for the evening and observed that the apartment was dark. Tatum speculated that Rainey was with another man, Ronald Cobbins, in the bedroom of the apartment. Not having a key to the locked front door of the apartment, Tatum repeatedly knocked on the door and rang the door bell. When no one answered, he knocked on the door of a neighboring apartment, also to no avail. Frustrated in his attempts to enter Rainey's apartment through the front door, Tatum climbed onto a ledge of the apartment building and made his way along the ledge to a window. He then broke the window pane and entered the living room of Rainey's apartment.

When Rainey heard the noise of Tatum entering the apartment, she emerged from the bedroom to confront him. Rainey warned Tatum that she had called the police and told Tatum to leave. Tatum, referring to the man he suspected was in the bedroom, replied, "That nigger's in here, and I am going to kill him." Trial Tr. at 402. By this time, Tatum had retrieved from between the cushions of the living room couch a gun he had hidden there the day before. Rainey again ordered Tatum to leave, but Tatum refused, pointing the gun at Rainey and warning her to get out of his way or he would kill her. Tatum knocked Rainey aside and ran through the dining room to the kitchen, where he kicked in the bedroom door and fired five shots into the dark bedroom. Cobbins pleaded from the bedroom, "Stop shooting me man, stop shooting me." Id. at 405. When the shooting stopped, Rainey ran to the bedroom and tended to Whitney, who apparently had been asleep in the bedroom and was bleeding profusely from multiple gunshot wounds. Cobbins, who also had been shot multiple times, emerged from the bedroom, brandished a knife, and started toward Tatum. Tatum snatched the

knife away from Cobbins and stabbed Cobbins five times. Both Cobbins and Whitney ultimately died from the gunshot wounds inflicted by Tatum.

A state grand jury charged Tatum with one count of murder in the first degree for the death of Cobbins (Count I), another count of murder in the first degree for the death of Whitney (Count III), two counts of armed criminal action (Counts II, IV), and one count of burglary in the first degree (Count V). Tatum's case came to trial and, at the close of all the evidence, Tatum proffered a voluntary manslaughter instruction, an involuntary manslaughter instruction, and a second degree murder instruction as to Counts I and III. The requested instructions would have allowed the jury to find Tatum guilty of the lesser included offenses if it found that Tatum acted "under the influence of sudden passion arising from adequate cause." Defendant's Proposed Instructions A, H. Finding, as a matter of law, that "sudden passion is not a part of this case" and that "sudden passion didn't exist," Trial Tr. at 832, the state trial court rejected Tatum's proposed voluntary and involuntary manslaughter instructions altogether and settled on a second degree murder instruction omitting the proposed sudden passion element. The case was submitted to the jury accordingly.

After deliberating for several hours, the jury sent a note to the trial court requesting an involuntary manslaughter instruction and asking whether the jury could find Tatum guilty of involuntary manslaughter if it did not come to agreement on first or second degree murder. The trial court responded that it could not answer the jury's question and referred the jury to the evidence and the instructions already before it. The jury deliberated for another hour and ultimately returned a verdict finding Tatum guilty of first degree murder on Count I, second degree murder on Count III, and armed criminal action on Counts II and IV.[2]

---

[2]The jury never considered Count V, the burglary charge, because the State dismissed that charge at the close of all the evidence.

On direct appeal, Tatum argued, inter alia, that the trial court erred in rejecting Tatum's proffered instructions on voluntary manslaughter and second degree murder as to Count I and involuntary manslaughter as to Count III. The Missouri Court of Appeals concluded that the trial court's rejection of Tatum's voluntary manslaughter and second degree murder instructions on Count I was "nonprejudicial," State v. Tatum, 824 S.W.2d 22, 25 (Mo. Ct. App. 1991), and that the evidence could not support an involuntary manslaughter instruction on Count III, see id. at 26. Tatum moved for rehearing in the court of appeals or for transfer to the Missouri Supreme Court, and his motion was denied.

Apparently without having pursued any state post-conviction remedies after his direct appeal, Tatum filed a petition for a writ of habeas corpus in the District Court. The state conceded that Tatum had exhausted his state remedies with respect to all the issues raised in his habeas petition save one, not relevant to this appeal, that was procedurally barred. The District Court denied the petition, concluding, among other things, that the state trial court's refusal to submit the lesser included offense instructions "was not based upon 'an unreasonable determination of the facts in light of the evidence' or a misapplication of 'clearly established Federal law.'" Tatum v. Dormire, No. 97-0014-CV-W-5-P, at 2 (W.D. Mo. Dec. 31, 1997) (opinion and order denying petition for writ of habeas corpus) (quoting 28 U.S.C. § 2254(d)(1), (2) (Supp. II 1996)). This Court issued a certificate of appealability on Tatum's claim that the District Court erred in determining that the state trial court's failure to give the proffered manslaughter and second degree murder instructions did not violate Tatum's right to due process. For the reasons that follow, we affirm the judgment of the District Court.

Tatum apparently argues that Missouri law entitled him to the proffered voluntary manslaughter and second degree murder instructions on Count I and to the

involuntary manslaughter instruction on Count III,[3] and therefore that the state trial court's refusal to give the instructions deprived him of the process he was due under the Fourteenth Amendment. Cf. Pitts v. Lockhart, 911 F.2d 109, 112 (8th Cir. 1990) ("[Other] circuits . . . have held that the failure of a state court to instruct on a lesser included offense in a noncapital case never raises a federal constitutional question. We agree that the failure to give a lesser included offense instruction in a noncapital case rarely, if ever, presents a constitutional question." (citations omitted)), cert. denied, 501 U.S. 1253 (1991); see also Green v. Groose, 959 F.2d 708, 709 (8th Cir. 1992). Tatum seizes upon the "rarely, if ever" language in Pitts for the proposition that a trial court's refusal to give a lesser included offense instruction supported by the evidence in a noncapital case could, in some as yet undetermined circumstance, rise to an issue of constitutional dimension. Tatum further is convinced that his is that elusive case. We are satisfied that it is not.

Even were we to assume that a trial court's failure to instruct the jury on a lesser included offense in a noncapital case could ever amount to a constitutional issue for habeas review, Tatum's claim would fail, for his proffered instructions allowing the jury to consider sudden passion were not supported by the evidence at trial. If, in a capital case, "due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction," Hopper v. Evans, 456 U.S. 605, 611 (1982) (emphasis in original); see also Reeves v. Hopkins, 102 F.3d 977, 983 & n.10 (8th Cir. 1996), rev'd on other grounds, 118 S. Ct. 1895 (1998); Williams v. Armontrout, 912 F.2d 924, 928-30 (8th Cir. 1990), cert. denied, 498 U.S. 1127 (1991), then a fortiori due process is not offended when a state trial court refuses in a noncapital case to submit an instruction not supported by the evidence.

_____

[3]Although Tatum's appellate briefs refer to a single lesser included offense instruction and could be construed to deal with only the requested voluntary manslaughter instruction on Count I, we exercise our discretion to review fully the issue disposed of in the District Court's order and upon which we granted a certificate of appealability.

To support his contention that he was entitled to the proffered instructions on sudden passion arising from adequate cause,[4] Tatum points to his testimony at trial that he "lost it" when he was confronted by Rainey in the living room of Rainey's apartment. Trial Tr. at 699. But even assuming that passion drove Tatum's actions, Missouri law requires, for the reduction of an offense to one less culpable, passion "directly caused by and arising out of provocation by the victim . . . which passion arises at the time of the offense and is not solely the result of former provocation." Mo. Rev. Stat. § 565.002(7) (1994); State v. Price, 928 S.W.2d 429, 431 (Mo. Ct. App. 1996). The evidence adduced at trial showed that neither of Tatum's victims had any opportunity to provoke Tatum before he inflicted the fatal gunshot wounds. As the Missouri Court of Appeals found, "Tatum opened the door and immediately began firing into the dark room without waiting to see if anyone was there and if so who it was. . . . There was no unexpected encounter or provocation which excited Tatum." State v. Tatum, 824 S.W.2d at 26.

Furthermore, the degree of passion contemplated by Missouri law is "so extreme that for the moment, the action is being directed by passion, not reason." Price, 928 S.W.2d at 431. That is, the evidence must reveal "a degree of passion . . . sufficient to substantially impair an ordinary person's capacity for self-control." Mo. Rev. Stat. § 565.002(1) (1994) (defining adequate cause); State v. Scheets, 849 S.W.2d 637, 638 (Mo. Ct. App. 1993). The evidence at trial did not support Tatum's claim that he acted under such a degree of passion. Tatum admitted on cross-examination that he fired the gun into the bedroom with the purpose to seriously injure or kill Cobbins. See Trial Tr.

---

[4]We note initially that sudden passion is not an element of second degree murder under Missouri law, see Mo. Rev. Stat. § 565.021.1(1) (1994) (stating that a person commits second degree murder when he "[k]nowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person"), so that no amount of evidence of sudden passion would have entitled Tatum to a second degree murder instruction containing a sudden passion element.

at 713-14. Accordingly, the state trial court was constrained to conclude "as a matter of state law, that . . . sudden passion is not a part of this case." Id. at 832. On direct appeal, the Missouri Court of Appeals gleaned from the trial testimony that "[t]he evidence shows just the opposite of sudden passion arising out of adequate cause. It shows that Tatum embarked on a calculated course of conduct to seriously injure or kill whoever was in the bedroom."[5] State v. Tatum, 824 S.W.2d at 26. We accord this finding of fact by the state appellate court the presumption of correctness that it is due. See 28 U.S.C. § 2254(e)(1) (Supp. II 1996); Beets v. Iowa Dep't of Corrections Servs., 164 F.3d 1131, 1135 (8th Cir. 1999) (stating that the presumption of correctness applies to factual determinations made by state trial courts and appellate courts).

Tatum makes much of the jury's request for guidance on the offense of involuntary manslaughter during its deliberations. But the jury's request for an involuntary manslaughter instruction simply does not bear upon the legal determination that Tatum's proffered instructions were unsupported by the evidence as a matter of law. As the Missouri Court of Appeals aptly stated on Tatum's direct appeal, "[T]he question of whether there was evidence upon which to base an instruction containing a paragraph on sudden passion arising from adequate cause was a question of law for the court and not a question of fact for the jury." State v. Tatum, 824 S.W.2d at 26.

We note further that Count III was submitted to the jury with a transferred intent instruction allowing the jury to find in Tatum's intention to seriously injure or kill Cobbins the mens rea appertaining to Whitney's homicide. See Mo. Rev. Stat. § 565.003.1 (1994) ("The culpable mental state necessary for a homicide offense may be found to exist if the only difference between what actually occurred and what was the

---

[5]Even if the evidence could have supported a voluntary manslaughter instruction on Count I, it is unlikely that the instruction would have changed the jury's verdict on that count, for the jury was instructed on the lesser included offense of second degree murder and nonetheless returned a verdict of first degree murder.

object of the offender's state of mind is that a different person or persons was [sic] killed."). By convicting Tatum of first degree murder on Count I, the jury necessarily found that Tatum deliberately killed Cobbins. See Mo. Rev. Stat. § 565.020.1 (1994) ("A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter."). As we already have mentioned, the Missouri Court of Appeals determined on direct appeal that the evidence showed as much and therefore held that the proffered involuntary manslaughter instruction on Count III was not supported by the evidence.

For the reasons stated, we conclude that Tatum's claim of constitutional error lacks merit. Accordingly, the judgment of the District Court denying the petition for habeas relief is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.