OPINION
This appeal emanates from the Ashtabula County Court of Common Pleas. Appellant, Jeffrey W. Miller, appeals his conviction on one count of felony-murder while committing an offense of violence, in violation of R.C. 2903.02, with a gun specification. The following facts are relevant to a determination of this appeal.
On September 4, 1998, appellant stayed home while his wife, Lisa Miller, went to work. Appellant spent the afternoon with his uncle, Allen Massena, participating in target practice. They used a .357 magnum revolver that appellant had purchased some six months earlier. When they were finished, the gun was unloaded, and placed in a holster.
Late in the afternoon, appellant returned home to wait for his wife to get off work. He talked with his neighbor, Ed Capp, who invited him to go to a tavern with him for a drink. Appellant declined the invitation. Appellant's wife failed to come home as expected so appellant wrote her a note informing her that he was "leaving" her. At some point that night, at approximately 9:00 p.m., appellant went to the Iroqois Lounge to join Capp for a drink. It was apparent that appellant had already been drinking. Appellant told Capp about his decision to leave his wife and asked Capp if he would help remove all of his firearms from his house so that "Lisa wouldn't mess with them." Capp agreed and the two men drove back to appellant's residence.
Upon returning home, the men unsuccessfully attempted to start a fire behind the houses in a "burn pit." Lisa Miller was still not home. They went inside appellant's house at approximately 10:00 p.m. and appellant telephoned his wife's daughter-in-law, Karen Garside, in an attempt to see if she knew where his wife might be. She did not. She testified that appellant sounded intoxicated and "was obviously upset with Lisa." Capp sat at the kitchen table and read the note that appellant had written to Lisa. Appellant went upstairs to retrieve his guns. He brought down his .357 magnum in a holster and two shotguns. Capp requested that appellant unload all of the weapons, which appellant did, placing the cartridges on the kitchen table. Capp double-checked to make sure that the revolver was unloaded.
Appellant went back upstairs to retrieve his ammunition box. At that time, Capp heard the garage door opening and he announced that Lisa was home. Capp picked up the three weapons and began to leave, but he dropped one of the shotguns. Appellant told him "never mind, leave them." Capp left without seeing Lisa Miller, but he heard her voice.
Another neighbor, Jason While testified that he observed Lisa Miller pull into the driveway and park in the garage. He heard the car door close and then heard appellant angrily say, "if you don't shut up bitch, I'll kill you." Then, White claimed that approximately an hour later he heard a gun shot coming from the Miller residence. He did not attempt to call 911, however, because it was not unusual to hear gun shots coming from the Miller residence.
At 10:20 p.m., Karen Garside received another telephone call from appellant informing her that Lisa was home. At almost the same time, Lisa's daughter, Melissa Garside, telephoned the Miller residence and talked to Lisa. Lisa told her that "Jeff's drunk off his ass and he's playing with all his guns." Immediately thereafter, appellant took the telephone and said, "your mother is busy right now. You'll have to talk to her later." Appellant then hung up the telephone.
At 10:28 p.m., appellant placed a 911 call and told the dispatcher that he accidentally shot his wife. At 10:30 p.m., appellant telephoned 911 again, reiterating that a terrible accident had occurred. Officer Ronald Kaydo of the Ashtabula Police Department was the first to arrive on the scene. He found appellant with his hand on Lisa Miller's neck, and appellant stated that an accident had occurred and he was trying to stop the bleeding. Officer Kaydo observed a .357 magnum on the kitchen table, and a holster on the floor. The revolver was fully loaded except for one round having been fired. The holster was damaged as though the gun had been fired while still in the holster. Lisa Miller was dead, having been shot once in the face from a distance of approximately eighteen inches. Her carotid artery had been severed. Officer Kaydo and another officer searched the house and found an ammunition box, ammunition, and several shotguns on the second floor.
On October 7, 1998, appellant was indicted by the Ashtabula County Grand Jury on one count of aggravated murder in violation of R.C. 2903.01, and one count of felony-murder, in violation of R.C. 2903.02; each count carried a firearm specification. On August 20, 1999, appellant filed a motion to dismiss the felony-murder charge on the basis that R.C. 2903.02
is unconstitutional. The trial court overruled appellant's motion to dismiss.
The matter proceeded to a jury trial commencing September 14, 1999. On September 24, 1999, the jury found appellant not guilty of aggravated murder, but guilty of felony-murder while committing an offense of violence. He was also found to have committed the offense with a gun. Appellant was sentenced to a term of incarceration of fifteen years to life on the murder charge. He was also given a three-year sentence on the gun specification, with the two sentences to run consecutively.
On October 8, 1999, appellant filed a motion for acquittal, motion for arrest of judgment, and a motion for a new trial. These motions were overruled by the trial court.
Appellant timely filed a notice of appeal and has now set forth the following assignments of error:
 "1. The trial court erred to the prejudice of the defendant-appellant when it failed to dismiss the felony-murder charge due to its being in violation of the defendant-appellant's due process rights as guaranteed by the Ohio and United States Constitutions.
 "2. The trial court erred to the prejudice of the defendant-appellant when it failed to dismiss the felony-murder charge due to its being in violation of the defendant-appellant's equal protection rights as guaranteed by the Ohio and United States Constitutions.
 "3. The trial court erred to the prejudice of the defendant-appellant when it failed to dismiss the felony-murder charge due to its being in violation of the defendant-appellant's rights against cruel and unusual punishment as guaranteed by the Ohio and United States Constitutions.
 "4. The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.
 "5. The trial court erred to the prejudice of the defendant-appellant when it improperly admitted irrelevant hearsay testimony.
 "6. The defendant-appellant's constitutional rights under the confrontation clause of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 and 16 of the Ohio Constitution were prejudiced when the trial court precluded the defendant from impeaching a witness with his juvenile record."
 In the first assignment of error, appellant contends that the trial court erred when it failed to dismiss the felony-murder charge due to it violating his due process rights as guaranteed by the Ohio and United States Constitutions.
R.C. 2903.02(B), which became effective June 30, 1998, provides:
 "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit the offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."
 Appellant asserts that the new felony-murder rule deviates from the independent felony rule by allowing murder to be charged based on non-independent conduct such as felonious assault. This exact argument was considered and rejected recently by our court. In State v. Hayden (July 14, 2000), Lake App. No. 99-L-037, unreported, we first noted that "all legislative enactments enjoy a strong presumption of constitutionality" and that "legislation will not be invalidated unless the challenger establishes that it is unconstitutional beyond a reasonable doubt." Id. at 8. We concluded that R.C. 2903.02(B), the felony-murder statute, was constitutional. We stated:
 "Under the common law approach, R.C. 2903.02(B), does not relieve the state of the burden of proving mens rea simply because the intent to kill is conclusively presumed so long as the state proves the required intent to commit the underlying felony. At common law, `malice aforethought' was ascribed to a felon who killed another in the perpetration of an inherently dangerous felony such as rape, robbery, or burglary. Specifically, under the common law rule, the United States Supreme Court recognized that `prosecutors do not need to prove a culpable mental state with respect to the murder because intent to kill is conclusively presumed if the state proves intent to commit the underlying felony.' Hopkins v. Reeves (1998), 524 U.S. 88, 91-92. Thus, several states have found that felony-murder statutes pass constitutional muster regarding the mens rea issue because those statutes require the state prove the intent of the underlying felony. Jones v. State (1977), 568 P.2d 837, 844; see, also, State v. Ragland (1988), 420 N.W.2d 791, 793-794; Perkins v. Grammar (C.A.8, 1988), 838 F.2d 294, 295-296." Id. at 9. See, also, State v. Smathers
(Dec. 20, 2000), Summit App. No. 19945, unreported, 2000 Ohio App. LEXIS 5981.
 Based upon our prior decision in Hayden, appellant's first assignment of error is without merit.
In the second assignment of error, appellant argues that the trial court erred when it failed to dismiss the felony-murder charge due to it violating his equal protection rights as guaranteed by the Ohio and United States Constitutions. Specifically, appellant submits the felony-murder statute, R.C. 2903.02(B), and the involuntary manslaughter statute, R.C. 2903.04(A), prohibit identical activity and require identical proof, yet impose different penalties. Thus, similarly situated people are treated differently, depending on which crime they are charged with and convicted. The penalty for felony-murder is greater than the penalty for involuntary manslaughter.
From a close examination of the two statutes in question it is clear that they do not prohibit the same activity. R.C. 2903.02(B), the felony-murder statute, provides:
 "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."
 R.C. 2903.04(A), the involuntary manslaughter statutes, provides:
 "No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony."
 In considering whether a violation of the Equal Protection Clause has occurred, the Supreme Court of Ohio has held that the "issue * * * is whether both statutes require the state to prove identical elements while prescribing different penalties." State v. Wilson (1979), 58 Ohio St.2d 52, 55. The test to be applied is "whether, if the defendant is charged with the elevated crime, the state has the burden of proving an additional element beyond that required by the lesser offense." Id.
In the present case, to be convicted of felony-murder, one must have committed or attempted to commit an offense of violence that is a felony of the first or second degree whereas the involuntary manslaughter statute only requires that the offender have committed or attempted to commit any felony. There is no requirement that the felony was one of violence or that it was of the first or second degree. Thus, there are additional elements that must be proven in order to obtain a conviction for felony-murder.
Additionally, Ohio's felony-murder statute specifically excepts involuntary manslaughter from being the underlying felony required to obtain a conviction. Hence, the elements can never be identical as an offender could never be convicted of both crimes.
Based upon the foregoing analysis, Ohio's felony-murder statute does not violate appellant's equal protection rights. Appellant's second assignment of error is without merit.
In the third assignment of error, appellant maintains that the trial court erred when it failed to dismiss the felony-murder charge due to it violating his rights against cruel and unusual punishment as guaranteed by the Ohio and United States Constitutions.
We note that this issue was not raised at trial but, instead, is asserted for the first time in this appeal. The Supreme Court of Ohio has held that the "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which is apparent at the time of trial, constitutes a waiver of such issue * * * and therefore need not be heard for the first time on appeal." State v.Awan (1986) 22 Ohio St.3d 120, syllabus. See, also, State v. Gordon
(1971), 28 Ohio St.2d 45, paragraph two of the syllabus. Here, we decline to exercise our discretion to consider this constitutional issue for the first time on appeal. Appellant's third assignment of error is overruled.
In the fourth assignment of error, appellant asserts that the verdict was against the manifest weight of the evidence. Appellant argues that the greater amount of credible evidence demonstrated that the shooting was accidental rather than intentional.
In State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, at 11, we held:
 "`[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) (t)he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)."'" (Citations omitted and emphasis sic.) See, also, State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 Instead of addressing appellant's manifest weight argument on its merits at this time, we digress to discuss a related, but more compelling issue. That issue is whether appellant's conviction for felony-murder can stand. We conclude that it was plain error to even allow this issue to go to the jury. The facts of this case simply do not support a charge of felonious assault/felony-murder and, thus, the trial court should have dismissed that charge before the jury began its deliberations.
From a review of the record in this case, it is apparent that the jury was instructed in the following manner. They were instructed to first consider the charge of aggravated murder. Then, if they determined that appellant was not guilty, they should consider the lesser offenses of murder and negligent homicide. They were further instructed to consider the offense of felony-murder, with felonious assault being the underlying crime.
From the beginning, it was the state's contention that appellant intentionally shot his wife in the head. The defense, however, argued that the shooting was accidental. Clearly, one of those two choices represents the truth. Either appellant intended to shoot his wife, or it was accidental. If it was intentional, then appellant committed either aggravated murder or murder, depending on whether there was prior calculation and design. If it was unintentional, i.e., the gun was accidentally discharged while appellant was holding it or waving it around, then such conduct would constitute negligent homicide. In either event, it was not a felonious assault.
We fail to see how appellant's actions could have constituted felonious assault, as the underlying crime of violence necessary to support a felony-murder conviction. Felonious assault is defined as knowingly causing, or attempting to cause, physical harm to another by means of a deadly weapon. R.C. 2903.11(A). Thus, as applied in the case at bar, in order to establish a felonious assault, the state would have to show that appellant knowingly caused physical harm to his wife with a gun. This would rule out an accidental shooting. If appellant had knowingly aimed the weapon at his wife's leg and shot her there, that could have constituted felonious assault. However, he did not shoot her in the leg, or the arm, or some other non-vital portion of her body. Nor did he shoot her from some great distance which would have disrupted his aim. The evidence at trial was that appellant fired a .357 magnum at this wife's head from a distance of approximately eighteen inches. Assuming that appellant did so knowingly, as is required to meet the definition of felonious assault, such action would clearly constitute either aggravated murder, or murder, depending on whether there was prior calculation and design. Such action could only have been intended to end the victim's life. That is murder, not felonious assault. If the gun discharged accidentally, that would constitute negligent homicide, not felonious assault. Either way, felonious assault was not possible as a matter of law. Therefore, the charge against appellant of felony-murder, based upon the underlying crime of felonious assault, was not possible. Hence, it was error for the trial court to allow that charge to go to the jury.
The next question that must be answered concerns what remedy is appropriate. It is apparent that after determining that appellant was guilty of felony-murder, the jury stopped their deliberations and did not consider the lesser-included offenses of murder and negligent homicide. It is clear that the jury deliberations were tainted by the inclusion of an improper instruction resulting in prejudice to appellant. The only remedy sufficient to insure that justice occurs in this case is to give appellant a new trial.
Based upon the foregoing analysis, appellant's argument that his conviction for felony-murder was against the manifest weight of the evidence is sustained, albeit for different reasons than set forth in his brief. Appellant's fourth assignment of error is well taken.
In the fifth assignment of error, appellant contends that the trial court erred when it improperly admitted irrelevant hearsay testimony. Specifically, appellant objects to the admission of the testimony given by the state's witness, Ken Sironen, a co-worker of Lisa Miller. Sironen testified that on the afternoon of September 4, 1998, just hours before Lisa Miller was killed, she told him "[i]f I come up shot in the head, it would be that bastard [appellant] that did it."
Appellant argues that this statement was hearsay as it was a statement made by someone other than the testifying witness, offered to prove the truth of the matter asserted. See Evid.R. 801(C). The state counters that the testimony fell into one of the exceptions to the hearsay rule, specifically Evid.R. 803(3), which states:
 "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
"* * *
 "(3) Then existing, mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will."
 It is well-established that a victim's fearful state of mind is admissible under this exception to the hearsay rule because it is considered more trustworthy and reliable than hearsay in general due to its spontaneity. State v. Sutorius (1997), 122 Ohio App.3d 1, 8, citing Weissenberger, Ohio Evidence (1996) 365, Section 803.30. However, courts have strictly limited this testimony to a reflection of the state of mind of the victim, and not permitted testimony on the underlying reasons for the fear. Sutorius, at 8, citing State v. Apanovitch (1987), 33 Ohio St.3d 19, 21-22. Additionally, the Supreme Court of Ohio has held that the testimony must point forward in time rather than to events of the past. Apanovitch, at 21-22.
In Sutorius, the First District Court of Appeals held that it was not error in a murder case for the trial court to admit into evidence statements of the victim that he had made to others that he was fearful of the defendant. Those statements reflected his then-existing state of mind and were, therefore, admissible pursuant to Evid.R. 803(3). We agree with that analysis. The present case, however, is distinguishable fromSutorius and other cases like it. Here, the statement in question went beyond Lisa Miller's then-existing state of mind. If she had merely said that she was fearful of appellant, that would have been admissible. Instead, she expressed her specific belief that appellant might kill her by shooting her in the head. That is precisely what the state was attempting to prove. Thus, this statement fell within the exception to the exception as set forth in the latter half of Evid.R. 803(3) which specifically excluded "a statement of memory or belief to prove the fact
remembered or believed." (Emphasis added.)
Based upon the foregoing analysis, the trial court erred in allowing into evidence this testimony which was clearly hearsay and did not fall into any exception. Appellant's fifth assignment of error is sustained.
In the sixth assignment of error, appellant submits that the trial court violated his constitutional rights under the Confrontation Clause of the Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I, of the Ohio Constitution when it precluded him from impeaching a witness on cross-examination. Specifically, appellant claims that he should have been permitted to impeach state's witness, Jason White, with his juvenile record. We disagree.
Evid.R. 609(D) provides that "[e]vidence of juvenile adjudications is not admissible except as provided by statute enacted by the General Assembly." R.C. 2151.358(H) states, in pertinent part:
 "Evidence of a judgment rendered and the disposition of a child under the judgment is not admissible to impeach the credibility of the child in any action or proceeding. Otherwise, the disposition of a child under the judgment rendered or any evidence given in court is admissible as evidence for or against the child in any action or proceeding in any court in accordance with the Rules of Evidence and also may be considered by any court as to the matter of sentence or to the granting of probation, * * *." (Emphasis added.)
 As this court held in State v. Pirman (1994), 94 Ohio App.3d 203, "[a] defendant who seeks to cross-examine a juvenile witness with juvenile records must `present some plausible showing' as to a proper purpose and use which would not include an attempt to merely impeach the witness's credibility." Id. at 210, quoting State v. Lukens (1990), 66 Ohio App.3d 794, 803. In the present case, it is clear that appellant wanted nothing more than to impeach the credibility of the witness. Appellant failed to demonstrate some plausible showing that the introduction of Jason White's juvenile record would have been anything more than a general attack on his credibility and character for truthfulness.
Accordingly, the trial court did not err in refusing to allow appellant to impeach Jason White with his juvenile record. Appellant's sixth assignment of error is without merit.
We note that during oral argument for this case, appellant was offered the opportunity to file a supplemental brief, and appellee was given the chance to file a reply brief. Both parties took advantage of this opportunity and we will now address appellant's supplemental assignments of error.
First, appellant contends that the indictment in this case was insufficient to charge a crime because it did not contain all the elements of an offense. Specifically, regarding the felony-murder charge, appellant argues that the indictment did not specify the degree of the offense of felonious assault — the underlying felony for the felony-murder. R.C. 2903.02(B) provides:
 "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 of the Revised Code."
 The indictment in the case at bar stated, in pertinent part:
 "On or about the 4th day of September, 1998, in the City of Ashtabula, Ashtabula County, Ohio, one JEFFREY MILLER, did cause the death of another, to-wit: Lisa Miller, as a proximate result of JEFFREY MILLER'S committing or attempting to commit an offense of violence, to-wit: felonious assault, as that crime is defined in the Ohio Revised Code Section 2903.11(A)(2)."
 Appellant claims that the indictment was deficient since it did not specify what degree of felony the felonious assault was that is noted in the charge. This claim is clearly without merit in that felonious assault is, by definition, either a first or second degree felony. R.C. 2903.11(D). It is a first degree felony only if the victim is a peace officer, which was not the case herein. Thus, the indictment was sufficient to charge appellant with felony-murder.
Next, appellant submits that the jury's verdict did not properly state a verdict for a violation of R.C. 2903.02(B), the felony-murder statute. On September 24, 1999, appellant was found "guilty of `Murder while committing an offense of violence' in the manner and form as he stands charged under O.R.C. 2903.02(B)." Appellant claims that the verdict is deficient because it fails to specify which offense of violence appellant committed and what degree of felony that offense is.
The Supreme Court of Ohio has held that "[j]ury verdicts in criminal cases are to have reasonable constructions and are not to be declared void unless from necessity originating in doubt of their import or irresponsiveness to the issue submitted, or unless they show a manifest tendency to work injustice." State v. McNicol (1944), 143 Ohio St. 39, paragraph two of the syllabus.
In the case sub judice, a review of the jury charge reveals that the jury was instructed to consider felonious assault as the underlying offense of violence. It is undisputed that felonious assault is, at a minimum, a second degree felony. Thus, the jury was fully informed of its responsibility and the law to be applied. We believe the verdict in question was reasonably constructed, was not unresponsive to the issue submitted, nor did it show "a manifest tendency to work injustice."McNicol.
In the final supplemental assignment of error, appellant asserts that the defective indictment and the improper jury verdict constitute plain error under Crim.R. 52. Based upon our analysis of these two issues raised in appellant's supplemental brief, it is clear that we disagree with appellant's contention.
Based upon the foregoing analysis, appellant's conviction is overturned, and the case is remanded to the trial court for a new trial in accordance with this opinion.
 ______________________________________ JUDGE WILLIAM M. O'NEILL
CHRISTLEY, J., dissents, NADER, J., concurs.