JOURNAL ENTRY AND OPINION
{¶ 1} Eric Miller appeals from the judgment of the common pleas court pursuant to a jury verdict finding him guilty of the murder of Duane Tabor, the kidnapping and aggravated robbery of Ronnell Hannah and receiving stolen property. On appeal, he assigns the following as error for our review:
 {¶ 2} I. EVIDENCE PRESENTED WAS INSUFFICIENT TO SUPPORT THE AGGRAVATED ROBBERY CONVICTION.
 {¶ 3} II. EVIDENCE PRESENTED WAS INSUFFICIENT TO SUPPORT THE KIDNAPPING CONVICTION.
 {¶ 4} III. EVIDENCE PRESENTED WAS INSUFFICIENT TO SUPPORT THE MURDER CONVICTION.
 {¶ 5} IV. MURDER CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
{¶ 6} Having reviewed the record and the legal arguments of the parties, we affirm the judgment of the trial court.
{¶ 7} The following facts were deduced from the testimony presented at Miller's jury trial. In the early morning hours of December 6, 2000, Miller, Brian Washington, and the decedent, Duane Tabor, were riding in a 1989 Pontiac that Washington had stolen the previous day. Washington testified that the three spent the night of December 5 and the early morning hours of December 6 riding around in the car, smoking crack cocaine and drinking at a crack house. They left the crack house between 7 a.m. and 8 a.m., purchased beer and drove down Euclid Avenue, East Cleveland, Ohio looking for drugs.
{¶ 8} Washington drove the vehicle, with Miller in the front passenger seat and Tabor in the backseat. While proceeding down Euclid Avenue, Miller saw Ronnell "Tank" Hannah and William "Manky" Jackson, and asked them if they had any drugs. The two men instructed Washington to pull into the parking lot of the Super Laundry across the street; however, as Hannah began to complete the transaction, he saw a police car, and got into the rear seat of the vehicle on the passenger side.
{¶ 9} Hannah testified for the state as a condition of his plea agreement and stated that he had been with Jackson the morning of the incident and that Jackson gave him a .32 caliber gun to hold. Hannah also admitted he was carrying ten to fifteen rocks of crack cocaine that day which he intended to sell. Hannah stated he entered the back seat of the vehicle behind the passenger and, as he handed two or three rocks of crack to Tabor, Miller turned around and demanded all of his drugs. Hannah attempted to exit the vehicle but could not. At that point Miller stabbed at his hand and head with a screwdriver.
{¶ 10} Contemporaneously, Tabor grabbed Hannah's arm, Miller instructed Washington to drive away and Hannah yelled for help from Jackson, who was still outside the vehicle. While Miller and Tabor struggled with Hannah, Tabor noticed the gun in Hannah's pocket and stated to Miller, "Killer, he got a gun."
{¶ 11} Hannah managed to get the gun out of his pocket and wrestled with Miller for possession of the weapon. During the struggle, the gun discharged and Tabor said he was hit. The gun discharged again as the car collided with the fence. Hannah recalled that Washington jumped out of the car after the first shot, Miller jumped out after the second shot, and Hannah exited after the car crashed into the fence.
{¶ 12} Washington's version of events is similar to Hannah's; however, Washington testified that after he jumped out of the car he ran to Fifth Avenue and turned around to see the car hit the fence. He saw Hannah get out of the car, turn around, and fire two more shots into the car. However, no other testimony supports this version of events. Dr. Frank Miller, the deputy coroner who performed the autopsy on Tabor, found only two gunshot wounds; one to the left chest and one in the right foot. The chest wound was determined to be the cause of death. Curtiss Jones of the Trace Evidence Department of the Cuyahoga County Coroner's Office examined the fabric of Tabor's coat and boot around the bullet holes and testified the gun muzzle was less than six inches away from Tabor when he was shot.
{¶ 13} Jonathan Gardner of the Bureau of Criminal Investigation (BCI), Firearms Section, testified the two bullets removed from Tabor were both .32 caliber fired from a revolver.
{¶ 14} Donna Rose of the Trace Evidence Unit of BCI testified the gunshot residue kit performed on Miller's hands after his arrest conclusively identified gunshot residue on both of his hands.
{¶ 15} In this appeal, Miller argues the state presented insufficient evidence to support a conviction of aggravated robbery, kidnapping, and murder. Regarding the sufficiency of the evidence against Miller, we note:
 {¶ 16} The court, on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. * * *.[1]
{¶ 17} The test for sufficiency of the evidence raises a question of law to be decided by the court before the jury may receive and consider the evidence of the claimed offense. In State v. Jenks,[2] the court stated:
 {¶ 18} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Citations omitted.)
{¶ 19} In this case, the state assumed the burden of proving Miller's guilt beyond a reasonable doubt for the crimes of aggravated robbery, kidnapping and murder.
{¶ 20} Aggravated robbery is defined in R.C. 2911.01 and states that no person, in attempting or committing a theft offense, or in fleeing immediately after the attempt or offense, shall have a deadly weapon under their control and either display it, brandish it or indicate the offender possesses it; or inflict or attempt to inflict serious physical harm on another.[3]
{¶ 21} Hannah testified that he was in the process of exchanging the rocks of crack cocaine for money when Miller, who was seated in the front seat, turned around with a screwdriver and said, "Let me get all that." Realizing he was being robbed, Hannah attempted to exit the vehicle when Miller stabbed his hand with the screwdriver. Hannah further testified that Miller told him if he tried to get out of the car, Miller would stab him in the neck and face.
{¶ 22} Miller was also indicted for kidnapping pursuant to R.C.2905.01(A)(2), which states, "no person, by force, threat, or deception * * * by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person * * * to facilitate the commission of any felony or flight thereafter."
{¶ 23} In this regard, Hannah testified that, as he attempted to exit the vehicle, Miller stopped him by stabbing his hand with the screwdriver and directed Washington to lock the doors. He further stated that he told the occupants to let him out of the car. They refused, and Washington sped away, ultimately crashing the vehicle into a fence. Only when the vehicle came to rest was Hannah able to exit.
{¶ 24} R.C. 2903.02(B) defines murder as follows:
 {¶ 25} No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *.
{¶ 26} We determine that the gunshot residue found on both of Miller's hands is dispositive in this murder case. Additionally, Washington and Hannah testified during the attempted robbery, that Hannah and Miller struggled for the .32 caliber gun which Hannah carried that day. Tabor ultimately died from one of those bullets. Miller is therefore culpable for the natural consequences of his actions.
{¶ 27} After viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of these crimes proven beyond a reasonable doubt. Therefore, these assignments of error are overruled.
{¶ 28} In his final assignment of error, Miller argues his conviction for murder was against the manifest weight of the evidence.
{¶ 29} Regarding the manifest weight of the evidence, the court in State v. Martin,[4] stated:
 {¶ 30} The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
{¶ 31} Additionally, the court in State v. Thompkins,[5] stated:
 {¶ 32} Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.
{¶ 33} Further, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact.[6]
{¶ 34} After reviewing the entire record in this case, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we cannot conclude that in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice. Therefore, this assignment of error is not well taken and it is overruled.
{¶ 35} At oral argument, Miller's counsel requested leave to file a supplemental brief. In that brief, Miller assigned the following as error for our review:
 {¶ 36} V. THE NEW AMENDMENT TO THE MURDER STATUTE, R.C. 2903.02(B) IS UNCONSTITUTIONAL, SINCE IT VIOLATES THE EQUAL PROTECTION AND DUE PROCESS CLAUSES OF THE UNITED STATES, AND OHIO CONSTITUTIONS.
{¶ 37} Here, Miller argues that because the category of offense described in R.C. 2903.02(B) is already included in the definition of involuntary manslaughter,[7] the state does not have to present any different proof to convict a defendant of murder than it would have to present to convict a defendant of involuntary manslaughter. We disagree.
{¶ 38} The argument that this statute violates equal protection and due process has been considered and rejected several times.[8]
In Miller, the court, referencing State v. Hayden[9] stated:
 {¶ 39} Under the common law approach, R.C. 2903.02(B), does not relieve the state of the burden of proving mens rea simply because the intent to kill is conclusively presumed so long as the state proves the required intent to commit the underlying felony. At common law, `malice aforethought' was ascribed to a felon who killed another in the perpetration of an inherently dangerous felony such as rape, robbery, or burglary. Specifically, under the common law rule, the United States Supreme Court recognized that `prosecutors do not need to prove a culpable mental state with respect to the murder because intent to kill is conclusively presumed if the state proves intent to commit the underlying felony.[10]
{¶ 40} Additionally, regarding Miller's equal protection argument, the court in Bowles stated:
 {¶ 41} Because no suspect class or fundamental right is involved, R.C. 2903.02(B) does not violate the equal protection clause as long as the legislation bears a rational relationship to a legitimate governmental interest. * * *.[11]
{¶ 42} Furthermore, the Supreme Court of Ohio has determined that the state does not bear the burden of proving that some rational basis justifies the challenged legislation; rather, Miller must negate every conceivable basis before an equal protection challenge can be upheld.[12]
Miller has failed to do so. Accordingly, this assignment of error is also overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, P.J., AND COLLEEN CONWAY COONEY, J., CONCUR.
[1] Crim.R. 29(A)
[2] (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.
[3] R.C. 2911.01 (A)(1) and (3).
[4] (1983), 20 Ohio App.3d 172, 485 N.E.2d 717.
[5] (1997), 78 Ohio St.3d 380, 678 N.E.2d 541.
[6] State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.
[7] R.C. 2903.04(A).
[8] See, e.g., State v. Bowles 2001 Ohio App. LEXIS 2145, (May 11, 2001), Lake App. No. 99-L-075, State v. Luttrell 2001 Ohio App. LEXIS 4848, (Nov. 2, 2001), Montgomery App. No. 18496, State v. Miller
2001 Ohio App. LEXIS 2967, (June 29, 2001), Ashtabula App. No. 99-A-0078,State v. Smathers 2000 Ohio App. LEXIS 5981, (Dec. 20, 2000), Summit App. No. 19945.
[9] 2000 Ohio App. LEXIS 3198, (July 14, 2000), Lake App. No. 99-L-037.
[10] See, Hopkins v. Reeves (1998), 524 U.S. 88, 91-92,118 S.Ct. 1895.
[11] Bowles, supra.
[12] State v. Williams (2000), 88 Ohio St.3d 513, 530-31,728 N.E.2d 342.