## HOPKINS, WARDEN *v.* REEVES

No. 96–1693.  Argued February 23, 1998—Decided June 8, 1998

THOMAS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, SCALIA, KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined. STEVENS, J., filed a dissenting opinion, *post*, p. 101.

*Don Stenberg,* Attorney General of Nebraska, argued the cause for petitioner. With him on the briefs was *J. Kirk Brown,* Assistant Attorney General.

*Roy W. McLeese III* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Waxman, Acting Assistant Attorney General Keeney,* and *Deputy Solicitor General Dreeben.*

*Paula Hutchinson,* by appointment of the Court, 522 U. S. 1074, argued the cause for respondent. With her on the brief were *Kent Gipson* and *Timothy K. Ford.**

JUSTICE THOMAS delivered the opinion of the Court.

In *Beck* v. *Alabama,* 447 U. S. 625 (1980), we held unconstitutional a state statute that prohibited lesser included offense instructions in capital cases, when lesser included offenses to the charged crime existed under state law and such instructions were generally given in noncapital cases. In this case, we consider whether *Beck* requires state trial courts to instruct juries on offenses that are not lesser included offenses of the charged crime under state law. We

---

*A brief of *amici curiae* urging reversal was filed for the State of Arizona et al. by *Grant Woods,* Attorney General of Arizona, *Paul J. McMurdie,* and *Jon G. Anderson,* Assistant Attorney General, joined by the Attorneys General for their respective States as follows: *Daniel E. Lungren* of California, *M. Jane Brady* of Delaware, *Alan G. Lance* of Idaho, *James E. Ryan* of Illinois, *Mike Moore* of Mississippi, *Jeremiah W. (Jay) Nixon* of Missouri, *Joseph P. Mazurek* of Montana, *Frankie Sue Del Papa* of Nevada, *Philip T. McLaughlin* of New Hampshire, *Dennis C. Vacco* of New York, *Michael F. Easley* of North Carolina, *Betty D. Montgomery* of Ohio, *W. A. Drew Edmondson* of Oklahoma, *Mark W. Barnett* of South Dakota, *John Knox Walkup* of Tennessee, and *Richard Cullen* of Virginia.

*David Porter* and *Helen C. Trainor* filed a brief for the National Association of Criminal Defense Lawyers as *amici curiae* urging affirmance.

conclude that such instructions are not constitutionally required, and we therefore reverse the contrary judgment of the Court of Appeals.

## I

In the early morning hours of March 29, 1980, police received an emergency call from the Religious Society of Friends meetinghouse in Lincoln, Nebraska. Responding to the call, they found Janet Mesner, the live-in caretaker, lying on the floor in the rear of the house with seven stab wounds in her chest. When an officer asked who had stabbed her, Mesner gave respondent's name. The officers then went to an upstairs bedroom and found the partially clad dead body of Victoria Lamm, a friend of Mesner who had been visiting the meetinghouse. She had been stabbed twice, the first blow penetrating the main pulmonary artery of her heart and the second her liver. A billfold containing respondent's identification was lying near Lamm's body. The police found underwear, later identified as respondent's, in the middle of the blood-soaked sheets of the bed; subsequent examination of the underwear revealed semen of respondent's blood type. Near the bed, the police found a serrated kitchen knife with Mesner's blood on it. Before dying, Mesner told an officer that respondent had raped her. Shortly thereafter, the police arrested respondent, who told them that although he could not remember much about the murders due to severe intoxication, he did recall stabbing and raping Mesner.

The State proceeded against respondent for both murders on a felony-murder theory. Under Nebraska law, felony murder is a form of first-degree murder and is defined as murder committed "in the perpetration of or attempt to perpetrate" certain enumerated felonies, including sexual assault or attempt to commit sexual assault in the first degree. Neb. Rev. Stat. §28–303 (1995). When proceeding on such a theory, Nebraska prosecutors do not need to prove a culpable mental state with respect to the murder because intent to kill is conclusively presumed if the State proves intent to

commit the underlying felony. *State* v. *Reeves*, 216 Neb. 206, 217, 344 N. W. 2d 433, 442 (1984). Although a conviction for felony murder renders a defendant eligible for the death penalty, see § 28–303, the jury is not charged with sentencing the defendant; under Nebraska law, capital sentencing is a judicial function, § 29–2520.

At trial, respondent requested that the jury be instructed on both murder in the second degree and manslaughter, which, he argued, were lesser included offenses of felony murder. App. 6–9.[1] The trial court refused on the ground that the Nebraska Supreme Court consistently has held that second-degree murder and manslaughter are not lesser included offenses of that crime. *Id.*, at 10. Respondent's jury thus was presented with only the two felony-murder counts.[2] Although respondent raised an insanity defense, the jury rejected it and convicted him on both counts. A three-judge sentencing panel then convened to consider aggravating and mitigating circumstances. It sentenced respondent to death on both convictions.

After the Nebraska Supreme Court affirmed his convictions and sentences, *State* v. *Reeves*, 216 Neb. 206, 344 N. W. 2d 433, cert. denied, 469 U. S. 1028 (1984), respondent unsuccessfully pursued state collateral relief, *State* v. *Reeves*, 234 Neb. 711, 453 N. W. 2d 359 (1990). This Court then vacated the Nebraska Supreme Court's judgment for further consideration in light of *Clemons* v. *Mississippi*, 494 U. S. 738 (1990), because respondent's death sentence had been based in part on an invalid aggravating factor. See *Reeves* v. *Nebraska*, 498 U. S. 964 (1990). On remand, the Nebraska Su-

---

[1] Under Nebraska law, second-degree murder is defined as "caus[ing] the death of a person intentionally, but without premeditation," § 28–304, and manslaughter as "kill[ing] another without malice, either upon a sudden quarrel, or caus[ing] the death of another unintentionally while in the commission of an unlawful act," § 28–305.

[2] Respondent did not request an instruction on sexual assault in the first degree.

preme Court followed *Clemons,* independently reweighed the applicable aggravating and mitigating factors, and reaffirmed respondent's sentences. *State* v. *Reeves,* 239 Neb. 419, 476 N. W. 2d 829 (1991), cert. denied, 506 U. S. 837 (1992).

Respondent then filed a petition for a writ of habeas corpus in Federal District Court. He raised 44 claims, including a claim that the trial court's failure to give his requested instructions was unconstitutional under *Beck.* The District Court rejected the *Beck* claim but granted relief on an unrelated ground. 871 F. Supp. 1182, 1202, 1205–1206 (Neb. 1994). After the Court of Appeals for the Eighth Circuit reversed the latter determination and remanded the case, 76 F. 3d 1424, 1427–1431 (1996), the District Court again granted respondent's petition, finding a due process violation arising out of the reaffirmance of his sentences by the Nebraska Supreme Court. See 928 F. Supp. 941, 959–965 (Neb. 1996).

On the State's appeal, the Court of Appeals held that although respondent was not entitled to relief on his due process claim, the Nebraska trial court had committed constitutional error in failing to give the requested second-degree murder and manslaughter instructions. 102 F. 3d 977 (1997). The Court of Appeals reasoned that the constitutional error was the same as that in *Beck,* despite the fact that there are no lesser included homicide offenses to felony murder under Nebraska law: In both cases, state law *"prohibited* instructions on noncapital murder charges in cases where conviction made the defendant death-eligible." 102 F. 3d, at 983 (emphasis in original). Because respondent "could have been convicted and sentenced for either second degree murder or manslaughter," the Court of Appeals concluded that he was constitutionally entitled to his proposed instructions. See *id.,* at 984. It further stated that denial of the instructions could not be justified by the fact that felony murder in Nebraska does not require a culpable mental state with respect to the killing, because in *Enmund* v. *Flor-*

*ida*, 458 U. S. 782 (1982), and *Tison* v. *Arizona*, 481 U. S. 137 (1987), this Court held that the death penalty could not be imposed in a felony-murder case if the defendant was a minor participant in the crime and neither intended to kill nor had shown reckless indifference to human life. See 102 F. 3d, at 984–985. The Court of Appeals therefore granted respondent's petition and, relying on Circuit precedent holding that *Beck* applies only where the defendant is in fact sentenced to death, gave the State the option of retrying respondent or agreeing to modify his sentence to life imprisonment. See 102 F. 3d, at 986.

Because the decision below conflicted with a prior decision of the Court of Appeals for the Ninth Circuit, see *Greenawalt* v. *Ricketts*, 943 F. 2d 1020 (1991), cert. denied, 506 U. S. 888 (1992), we granted certiorari. 521 U. S. 1151 (1997).[3]

## II

The Court of Appeals erred in concluding that its holding was compelled by *Beck*, as the two cases differ fundamentally. In *Beck*, the defendant was indicted and convicted of the capital offense of " '[r]obbery or attempts thereof when the victim is intentionally killed by the defendant.'" 447 U. S., at 627 (quoting Ala. Code § 13–11–2(a)(2) (1975)). Although state law recognized the noncapital, lesser included offense of felony murder, see 447 U. S., at 628–630, and although lesser included offense instructions were generally available to noncapital defendants under state law, the Ala-

---

[3] One of the questions on which we granted certiorari was whether the Court of Appeals' holding was a "new rule" under *Teague* v. *Lane*, 489 U. S. 288 (1989). See Pet. for Cert. i. Because the State raised this argument for the first time in its petition for a writ of certiorari, we choose to decide the case on the merits. Cf. *Godinez* v. *Moran*, 509 U. S. 389, 397, n. 8 (1993) (declining to address whether the Court of Appeals created a "new rule" because the petitioner did not raise a *Teague* defense in the lower courts or in its petition for certiorari).

bama death penalty statute prohibited such instructions in capital cases, *id.*, at 628. As a result, Alabama juries had only two options: to convict the defendant of the capital crime, in which case they were required to impose the death penalty,[4] or to acquit. *Id.*, at 628–629. We found that the denial of the third option of convicting the defendant of a noncapital lesser included offense "diminish[ed] the reliability of the guilt determination." *Id.*, at 638. Without such an option, if the jury believed that the defendant had committed some other serious offense, it might convict him of the capital crime rather than acquit him altogether. See *id.*, at 642–643. We therefore held that Alabama was "constitutionally prohibited from withdrawing that option from the jury in a capital case." See *id.*, at 638.

In Nebraska, instructions on offenses that have been determined to be lesser included offenses of the charged crime are available to defendants when the evidence supports them, in capital and noncapital cases alike.[5] Respondent's proposed instructions were refused because the Nebraska Supreme Court has held for over 100 years, in both capital and noncapital cases, that second-degree murder and manslaughter are not lesser included offenses of felony murder. See, *e. g., State* v. *Price,* 252 Neb. 365, 372, 562 N. W. 2d 340, 346 (1997); *State* v. *Masters,* 246 Neb. 1018, 1025, 524 N. W. 2d 342, 348 (1994); *State* v. *Ruyle,* 234 Neb. 760, 773, 452 N. W. 2d 734, 742–743 (1990); *State* v. *McDonald,* 195 Neb. 625, 636–637, 240 N. W. 2d 8, 15 (1976); *Thompson* v. *State,*

---

[4] If the jury imposed the death penalty, the trial judge had the authority to reduce the sentence to life imprisonment without the possibility of parole. The jury, however, was not instructed to this effect; rather, it was told that it was required to impose the death penalty if it found the defendant guilty. See 447 U. S., at 639, n. 15.

[5] We noted this fact in *Beck* in distinguishing Alabama's scheme from the practices in the rest of the States. See 447 U. S., at 636, n. 12 (citing *State* v. *Hegwood,* 202 Neb. 379, 275 N. W. 2d 605 (1979)).

106 Neb. 395, 184 N. W. 68 (1921); *Morgan* v. *State*, 51 Neb. 672, 695, 71 N. W. 788, 794–795 (1897). If a Nebraska trial court gives instructions on those offenses, and the defendant is convicted only of second-degree murder or manslaughter, that conviction must be reversed on appeal. See *Thompson* v. *State, supra,* at 396, 184 N. W., at 68. Thus, *as a matter of law,* Nebraska prosecutors cannot obtain convictions for second-degree murder or manslaughter in a felony-murder trial.

*Beck* is therefore distinguishable from this case in two critical respects. The Alabama statute prohibited instructions on offenses that state law clearly recognized as lesser included offenses of the charged crime, and it did so only in capital cases. Alabama thus erected an "artificial barrier" that restricted its juries to a choice between conviction for a capital offense and acquittal. Brief for United States as *Amicus Curiae* 20 (citing *California* v. *Ramos*, 463 U. S. 992, 1007 (1983)). Here, by contrast, the Nebraska trial court did not deny respondent instructions on any existing lesser included offense of felony murder; it merely declined to give instructions on crimes that are not lesser included offenses. In so doing, the trial court did not create an "artificial barrier" for the jury; nor did it treat capital cases differently from noncapital cases. Instead, it simply followed the Nebraska Supreme Court's interpretation of the relevant offenses under state law.

By ignoring these distinctions, the Court of Appeals limited state sovereignty in a manner more severe than the rule in *Beck.* Almost all States, including Nebraska, provide instructions only on those offenses that have been deemed to constitute lesser included offenses of the charged crime. See n. 5, *supra.*[6] We have never suggested that the Consti-

---

[6] In determining *whether* an offense is a lesser included offense of a particular crime, the States have adopted a variety of approaches. See, *e. g., State* v. *Berlin*, 133 Wash. 2d 541, 550–551, 947 P. 2d 700, 704–705

tution requires anything more. The Court of Appeals in this case, however, required in effect that States create lesser included offenses to all capital crimes, by requiring that an instruction be given on some *other* offense—what could be called a "lesser related offense"—when no lesser included offense exists. Such a requirement is not only unprecedented, but also unworkable. Under such a scheme, there would be no basis for determining the offenses for which instructions are warranted. The Court of Appeals apparently would recognize a constitutional right to an instruction on any offense that bears a resemblance to the charged crime and is supported by the evidence. Such an affirmative obligation is unquestionably a greater limitation on a State's prerogative to structure its criminal law than is *Beck*'s rule that a State may not erect a capital-specific, arti-

---

(1997) (en banc) (comparing statutory elements of the lesser offense to determine whether all of them are contained in the greater offense); *People* v. *Beach*, 429 Mich. 450, 462, 418 N. W. 2d 861, 866–867 (1988) (applying the "cognate evidence" approach: a lesser included offense instruction may be given even though all of the statutory elements of the lesser offense are not contained in the greater offense, if the "overlapping elements relate to the common purpose of the statutes" and the specific evidence adduced would support an instruction on the cognate offense (internal quotation marks and citation omitted)); *State* v. *Curtis*, 130 Idaho 522, 524, 944 P. 2d 119, 121–122 (1997) (court looks both to the statutory elements and to the information to determine whether it "charges the accused with a crime the proof of which necessarily includes proof of the acts that constitute the lesser included offense"). Cf. *Schmuck* v. *United States*, 489 U. S. 705 (1989) (adopting statutory elements test for federal criminal law).

Since the time of respondent's conviction, Nebraska has alternated between use of the statutory elements test and the cognate evidence test; it currently employs the former. See *State* v. *Williams*, 243 Neb. 959, 963–965, 503 N. W. 2d 561, 564–565 (1993) (readopting statutory elements test), overruling *State* v. *Garza*, 236 Neb. 202, 207–208, 459 N. W. 2d 739, 743 (1990) (reaffirming cognate evidence test), disapproving *State* v. *Lovelace*, 212 Neb. 356, 359–360, 322 N. W. 2d 673, 674–675 (1982) (applying statutory elements test). It has nonetheless consistently reaffirmed its holding that felony murder has no lesser included homicide offenses.

ficial barrier to the provision of instructions on offenses that actually are lesser included offenses under state law.

The Court of Appeals justified its holding principally on the ground that respondent had been placed in the same position as the defendant in *Beck*—that there had been a distortion of the factfinding process because his jury had been " 'forced into an all-or-nothing choice between capital murder and innocence.' " 102 F. 3d, at 982 (quoting *Spaziano* v. *Florida,* 468 U. S. 447, 455 (1984)). In so doing, the Court of Appeals again overlooked significant distinctions between this case and *Beck.* In *Beck,* the death penalty was automatically tied to conviction, and Beck's jury was told that if it convicted the defendant of the charged offense, it was required to impose the death penalty. See *Beck* v. *Alabama,* 447 U. S., at 639, n. 15. This threatened to make the issue at trial whether the defendant should be executed or not, rather than "whether the State ha[d] proved each and every element of the capital crime beyond a reasonable doubt." *Id.,* at 643, n. 19. In addition, the distortion of the trial process carried over directly to sentencing, because an Alabama jury unwilling to acquit had no choice but to impose the death penalty. There was thus a significant possibility that the death penalty would be imposed upon defendants whose conduct did not merit it, simply because their juries might be convinced that they had committed some serious crime and should not escape punishment entirely.

These factors are not present here. Respondent's jury did not have the burden of imposing a sentence. Indeed, with respect to respondent's insanity defense, it was specifically instructed that it had "no right to take into consideration what punishment or disposition he may or may not receive in the event of his conviction or . . . acquittal by reason of insanity." App. 24. In addition, the three-judge panel that imposed the death penalty did not have to consider the dilemma faced by Beck's jury; its alternative to death was not

setting respondent free, but rather sentencing him to life imprisonment.[7]

Moreover, respondent's proposed instructions would have introduced another kind of distortion at trial. Nebraska proceeded against respondent only on a theory of felony murder, a crime that under state law has no lesser included homicide offenses. The State therefore assumed the obligation of proving only that crime, as well as any lesser included offenses that existed under state law and were supported by the evidence; its entire case focused solely on that obligation. To allow respondent to be convicted of homicide offenses that are *not* lesser included offenses of felony murder, therefore, would be to allow his jury to find beyond a reasonable doubt elements that the State had not attempted to prove, and indeed that it had ignored during the course of trial. This can hardly be said to be a reliable result: "Where no lesser included offense exists, a lesser included offense instruction detracts from, rather than enhances, the rationality of the process." *Spaziano* v. *Florida, supra,* at 455.

The Court of Appeals also erroneously relied upon our decisions in *Tison* v. *Arizona,* 481 U. S. 137 (1987), and *Enmund* v. *Florida,* 458 U. S. 782 (1982), to support its holding. It reasoned that because those cases require proof of a culpable mental state with respect to the killing before the death penalty may be imposed for felony murder, Nebraska could not refuse lesser included offense instructions on the ground that the only intent required for a felony-murder conviction is the intent to commit the underlying felony. See 102 F. 3d, at 984. In so doing, the Court of Appeals read *Tison* and

---

[7] We are not, of course, presented with a case that differs from *Beck* *only* in that the jury is not the sentencer, and we express no opinion here whether that difference alone would render *Beck* inapplicable. The crucial distinction between *Beck* and this case, as noted, is the distinction between a State's prohibiting instructions on offenses that state law recognizes as lesser included, and a State's refusing to instruct on offenses that state law does not recognize as lesser included.

*Enmund* as essentially requiring the States to alter their definitions of felony murder to include a *mens rea* requirement with respect to the killing.[8] In *Cabana* v. *Bullock,* 474 U. S. 376 (1986), however, we rejected precisely such a reading and stated that "our ruling in *Enmund* does not concern the guilt or innocence of the defendant—it establishes no new elements of the crime of murder that must be found by the jury" and "does not affect the state's definition of any substantive offense." *Id.,* at 385 (internal quotation marks and citation omitted). For this reason, we held that a State could comply with *Enmund's* requirement at sentencing or even on appeal. See 474 U. S., at 392. Accordingly, *Tison* and *Enmund* do not affect the showing that a State must make at a defendant's *trial* for felony murder, so long as their requirement is satisfied at some point thereafter. As such, these cases cannot override state-law determinations of when instructions on lesser included offenses are permissible and when they are not.

Finally, respondent argues that the Nebraska Supreme Court's longstanding interpretation that felony murder has no lesser included homicide offenses is arbitrary because, in his view, it is based only on recitations from prior cases, rather than on application of the lesser included offense tests in place since his conviction. See Brief for Respondent 40–43. This contention is certainly strained with respect to the crime of second-degree murder, which requires proof of intent to kill, while felony murder does not. See Neb. Rev. Stat. §§ 28–303, 28–304 (1995). It appears that the Nebraska Supreme Court has not undertaken respondent's suggested analysis with respect to unlawful act manslaughter— unintentional killing, committed in the perpetration of an unlawful act. See § 28–305. On his direct appeal, however, respondent did not challenge the Nebraska Supreme Court's

---

[8] The dissent also appears to be of this view, contending that Nebraska's justification for not providing an instruction on second-degree murder is inapplicable when the death penalty is sought. See *post,* at 101–102.

interpretation on this ground, and the clearest statement in his briefs on why a manslaughter instruction should have been given referred to manslaughter generally, for the following reason: "As the Court ruled in *State* v. *Ellis*, 208 Neb. 379, 303 N. W. 2d 741 (1981), such an instruction is necessary 'where there is no eye witness to the act, and the evidence is largely circumstantial.'" Reply Brief for Appellant in No. 81–706 (Neb. Sup. Ct.), p. 11. We will not second-guess the Nebraska Supreme Court's 100-year-old interpretation of state law when respondent failed to present his challenge to that court in the first instance.

For the foregoing reasons, the Court of Appeals' judgment granting respondent a conditional writ of habeas corpus is reversed.

*It is so ordered.*

JUSTICE STEVENS, dissenting.

As a matter of Nebraska law, second-degree murder is not ordinarily a lesser included offense of felony murder.[1] Based in part on this fact, the Court holds that it was not necessary for the trial judge to grant respondent's request for an instruction authorizing the jury to find respondent guilty of that offense. The Court's logic would be unassailable if the State had not sought the death penalty.

The reason that Nebraska generally does not consider second-degree murder a lesser included offense of felony murder is that it requires evidence of an intent to cause the death of the victim, whereas felony murder does not. But in this case the State sought to impose the death penalty on respondent for the offense of felony murder. As a matter of federal constitutional law, under *Enmund* v. *Florida*, 458 U. S. 782 (1982), it could not do so without proving that re-

---

[1] See, *e. g.*, *State* v. *Price*, 252 Neb. 365, 373, 562 N. W. 2d 340, 346 (1997); *State* v. *Masters*, 246 Neb. 1018, 1025, 524 N. W. 2d 342, 348 (1994); *State* v. *Ruyle*, 234 Neb. 760, 773, 452 N. W. 2d 734, 742–743 (1990); *State* v. *McDonald*, 195 Neb. 625, 636–637, 240 N. W. 2d 8, 15 (1976).

spondent intended to kill his victim, or under *Tison* v. *Arizona*, 481 U. S. 137 (1987), that he had the moral equivalent of such an intent. The rationale for Nebraska's general rule that second-degree murder is not a lesser included offense of felony murder does not, therefore, apply to this case.[2] To be faithful to the teaching of *Beck* v. *Alabama*, 447 U. S. 625 (1980), the Court should therefore hold that respondent was entitled to the requested instruction.

Accordingly, I respectfully dissent.

---

[2] Moreover, a recent Nebraska Supreme Court decision suggests that Nebraska law may be in flux on the question whether second-degree murder is a lesser included offense of felony murder. Only a few weeks ago, the Nebraska Supreme Court held that a jury verdict finding a defendant guilty of second-degree murder constituted an implied acquittal of the crime of first-degree murder, as defined in § 28–303 of Nebraska's criminal code, and therefore barred a second prosecution under that section for either felony murder or premeditated murder. *Nebraska* v. *White*, 254 Neb. 566, 577 N. W. 2d 741 (1998). In reaching that holding the Court explained: "The conduct prohibited by § 28–303 is first degree murder. Premeditated murder and felony murder are not denominated in Nebraska's statutes as separate and independent offenses, but only ways in which criminal liability for first degree murder may be charged and prosecuted." *Id.*, at 577, 577 N. W. 2d, at 748. The difference between a charge of premeditated murder and a charge of felony murder "is a difference in the State's *theory* of how [the defendant] committed the single offense of first degree murder. . . . Therefore, we hold that the crime of first degree murder, as defined in § 28–303, constitutes one offense even though there may be alternate theories by which criminal liability for first degree murder may be charged and prosecuted in Nebraska." *Ibid.* Given this holding, the Nebraska Supreme Court may conclude that second-degree murder is a lesser included offense of both premeditated and felony murder, as they are both part of the "one offense" of first-degree murder.