OWEN, Circuit Judge,
dissenting:
The majority opinion seriously misapprehends what constitutes actual harm, and it requires the State to retry Gongora or release him even though the evidence is overwhelming that, at the very least, Gongora was guilty as a party to capital murder. The majority opinion holds that both the Texas Court of Criminal Appeals (TCCA) and the federal district court were unreasonable in denying relief to Gongora. I respectfully dissent. I cannot agree with the majority opinion’s conclusion that “the extraordinarily extensive comments [by the prosecutor] on Gongora’s failure to testify resulted in actual prejudice.”[1] The prosecutor’s comments were neither “extraordinarily extensive” nor actually prejudicial.
The prosecutor’s problematic statements did not have a “substantial and injurious effect or influence in determining the jury’s verdict”[2] of guilt because the jury instructions permitted the jury to convict Gongora of capital murder by finding that he entered into a conspiracy to rob the victim, Sierra, and that Gongora should have anticipated his coconspirator would shoot the victim. The evidence was overwhelming that only two men exited the van to rob the victim. Gongora admitted, in a written confession, that he intended to rob Sierra and that he exited the van. While Gongora claimed that all six occupants got out of the van to commit robbery, every other account of the attempted robbery *284 and shooting was that only two men left the van. The prosecutor’s improper comments were focused on convincing the jury that Gongora was the actual shooter, an alternative ground on which the jury could have found Gongora guilty. The prosecutor’s comments about Gongora’s failure to testify had little, if any, bearing on Gongo-ra’s guilt as a conspirator and responsible party in light of Gongora’s own confession that he exited the van to rob Sierra.
With regard to the number and extent of the prosecutor’s improper comments, considered in context, the prosecutor commented three times, at most, on Gongora’s failure to testify, and these comments were themselves confusing. They were made in conjunction with the prosecutor’s arguments about the credibility of two occupants of the van during the shooting who testified at Gongora’s trial and on the failure of Gongora to call as a witness his brother Stephen Gongora, who was also in the van during the shooting.
An entirely separate question is whether Gongora’s conviction can be upheld since the jury issues allowed the jury to find him guilty of capital murder, as an alternative ground, under Texas’s “law of parties,” which permits conviction of capital murder on a finding that the defendant anticipated a human life would be taken. The majority opinion does not reach this issue. Though the jury issues may have been infirm under the Eighth Amendment, United States Supreme Court precedent that has not been expressly overruled permits Texas courts to make the finding that Gongora had the requisite mental state to satisfy the Eighth Amendment’s requirements. The TCCA made that finding and upheld Gongora’s conviction on direct appeal.
I would affirm the district court’s judgment denying habeas relief.
I
It is apparent that this has been a difficult ease for us to resolve. The fact that we ordered oral argument solely on whether a certificate of appealability (COA) was warranted is evidence of the uncertainty we had as to the merits of the issues presented. We nevertheless concluded that a COA should issue.[3] We then heard arguments a second time, only then reaching the merits of the two issues now before us, and our consideration of those questions has been lengthy.
The first of the two issues pertains to statements made by one of the prosecutors, Granger, during closing arguments. To put these statements in context, it is helpful to review the closing arguments in their entirety. Another prosecutor, Rousseau, began the State’s closing argument. The first point that Rousseau made to the jury was that Gongora could be found guilty even if he was not the “person who pulled the trigger” and that “[t]he evidence in this case is undisputed that the man is guilty as a party. That is without a doubt.” With regard to Texas’s law of parties, Rousseau told the jury that because of Texas’s law of parties, “the answer, is he guilty or not guilty, is an easy question. Yes, he’s guilty.” The prosecutor then focused on an alternate ground that could support a verdict of a guilt, which was a finding that Gongora was “the one who pulled the trigger.” Rousseau said that he would spend most of his time on this issue and proceeded to discuss the evidence that indicated that Gongora shot the victim and why evidence that Albert Orosco was the shooter should be discounted.
*285 Following Rousseau’s presentation, an attorney for Gongora began the defense’s closing argument. He, too, recounted the evidence, pointing out that Juan Vargas changed his initial statement in which Vargas had said that Carlos Almanza was the shooter and that James Luedtke had exited the van with Almanza. Gongora’s counsel conceded to the jury that other than this recanted statement, “Dylan Griffith is the only person that says Carlos [Almanza] did it.” The thrust of the argument was that there was varied testimony as to who was the shooter. The candidates included not only Gongora but also Orosco and Al-manza. Gongora’s other counsel then argued, attempting to convince the jury it should not find that a robbery or attempted robbery occurred because the shooter— either Almanza or Orosco, counsel posited — changed his mind as he approached the victim and killed Sierra rather than proceeding with a robbery. The motive for the murder, counsel contended, was some sort of insult from the victim to the shooter. Counsel then discussed the credibility of various witnesses, in particular Juan Vargas’s lack of credibility. Little was said to call into question Gongora’s guilt as a nonshooter.
Granger then argued for the State. His first point was a reminder to the jury to “[r]emember the law of parties. The law of parties is clear.” He discussed the substance of that law, contending that Gongo-ra was guilty of capital murder under it and again asserting that “[t]he law’s clear. The law’s very much on our side in this case.” Granger asked the jury to consider the facts, pointing to Gongora’s 'written confession to establish conspiracy to commit robbery.
Granger then turned to the alternate theory of guilt and examined at some length the varying evidence as to who actually shot the victim. One point that Granger emphasized to the jury was that every witness, including Sonia Ramos, a disinterested person who was driving past as the murder occurred, testified that two men got out of the van to accost the victim. The only contrary evidence was Gongora’s written confession, which said that “we all” got out of the van. At a minimum, counsel asserted, the credible evidence established that Gongora was one of those two men. Granger then argued that the consistency of the accounts of what happened “establishes the credibility” of the State’s witnesses.
The evidence reflects that there were six people inside the van just before the victim was killed. They were:
Juan Vargas, the driver, who testified
James Luedtke, who testified
Nelson Gongora, the defendant, who asserted the Fifth Amendment
Carlos Almanza, who asserted the Fifth Amendment
Albert Orosco, who asserted the Fifth Amendment
Steven Gongora, the defendant’s brother, who was not called as a witness
The prosecutor who presented the final closing argument, Granger, talked to the jury about the two men inside the van who testified, Vargas and Luedtke, and another who was inside the van, Stephen Gongora, who did not testify and who did not assert his Fifth Amendment rights. The prosecutor said, “When [those who had exited to rob the victim] got back inside the van, then consider what was said there.” It was then that the statements at issue commenced. Granger told the following to the jury:
Before you get there, I want to talk about the people you heard from. We’re talking about Juan [Vargas] and James [Luedtke] through this entire deal. I used his first name, because, in this *286 case, we have little brothers involved, you know, Steven Gongora, you know, Pablo Vargas. I’m using first names to keep everybody clear.
Who did you expect us to bring' to you? There’s six people inside that van. When you look at it, here it is. Who would you expect for us to give to you to establish who the shooter is? Are you going to be satisfied in a case with gang members just looking at one person, even though he’s telling you the exact truth, no matter what? Even if the time that he first told this story, he told the truth — he told the truth about someone he’s scared to death of [Gongora] — this is James Luedtke. He had nothing against him. He had no crime pending. He had no reason to hide the truth. He had no reason to talk to us, but he told us the truth.
You listen to people inside there. Who else would you want to hear from, though? The shooter? We’re not going to talk to that person. We’re not going to make a deal with that person. This person deserves what they get. This person right here.... Nelson Gongora, the shooter. That’s the person on trial. That’s the person who deserves to be found guilty of capital murder.
Who should we go ahead and talk to? Who should we go ahead and present to you? Should we talk to the shooter? Should we talk to' — •
At this point, Gongora’s attorney objected, “That’s a comment on the failure to testify,” and he requested a jury instruction to disregard the comment. He also moved for a mistrial. The trial judge sustained the objection, issued an instruction to disregard, and overruled Gongora’s motion for a mistrial.
The prosecutor continued, “Let me say this. And I don’t want to give the wrong impression in any sort of way. We’re asking, who do you expect to take the stand? Who do you expect to hear from, right?” Gongora’s attorney again objected, and the trial judge instructed the jury to disregard the comment. Gongora’s counsel moved for a mistrial, which was denied.
The prosecutor then attempted to address his error:
I don’t want — to make it clear, y’all, Defendant has a Fifth Amendment right not to testify. And, of course — and I don’t want to give any wrong impression on that whatsoever. Okay?
What I want to talk about is this. When you talk about the credibility of a person, I wish you — and I made a — I made a big mistake there. I’ll make it very clear. I’m not talking about, do you want to hear from him, because you can’t do that.
Gongora’s counsel again objected, but that objection was overruled “as to that particular statement.” The prosecutor continued,
Let me back up and tell you this. Let me define it by the roles in the car. That’s what I’m trying to get at. Okay? The roles in the car are this. You have a person inside the car who is the shooter. You have a person inside the car who got out with the shooter. You have a person inside the car who was guilty— or, actually, may have participated in another shooting later that night. You have a person inside the car who is just sitting there who is present. And then you have a person inside the car who is the Defendant’s brother, right? Where is that person? We know the person was there. They could have brought that person, but you never heard from that person. And that’s—
Gongora’s counsel interjected an objection, and the judge called counsel to the bench. Gongora’s attorney asserted that bench *287 warrants and subpoenas had been issued, but that “they [the witnesses other than Gongora] took the Fifth.” Gongora’s counsel also objected that the prosecutor had been pointing to a diagram “showing Albert [Orosco] and everybody else” while commenting on those witnesses’, not Gon-gora’s, failure to testify. The objection was sustained.
One of the State’s other prosecutors, Rousseau, then commented for the record, saying,
Immediately — what J.D. [Granger] was talking about there, so it’s clear for the record, was that he mentioned the name “Steven Gongora.” He mentioned the name, and he said, “The Defendant’s brother.” And he said, “Where is that person?”
Steven Gongora is the Defendant’s brother, and his name is also on the chart, and that’s what he was talking about.
The trial judge responded, “All right. You need to clear it up, Counselor.” At the request of Gongora’s counsel, the judge then reiterated that the objection was sustained, instructed the jury to disregard, and denied Gongora’s motion for a mistrial. Granger then continued, without any further objection by Gongora’s counsel, as follows:
Ladies and gentlemen, I want to wrap this up, because that’s what I’m talking about, the confusion in the case.
When I — when you’re talking about the people inside the car, this is it. You have the person inside the van and, from all the testimony, established one person is the shooter. You have a person in the car who got out and could possibly have stopped the killing from ever taking place. You have a person inside the car, by the testimony, you all know was involved in another shooting later that night. You have a person in the car who was related to the Defendant. That is his brother. Right? Then you have a person inside there who is just present. Okay?....
Those are the different roles of the persons inside the car. You ask who — you know, you hear from this case, and who should — you know, how to determine the credibility. Who do you want to hear from? Who do you expect to hear from? The person who wasn’t involved at all, that had nothing at all, just present during that deal? Of course, you hear from that person.
When you’re considering and evaluating the credibility of the next person — and that’s who I’m talking about in talking about who you’re going to hear from. I’m talking about, when listening to Juan Vargas, there’s different people who played different roles. When you consider the fact that we actually spoke to him, that’s what I’m talking about. I’m not talking about who would you want to hear from, who would you expect us to call, but I meant to define it in the terms of the roles of those involved in the case. Okay?
The roles that are defined in this case are abundantly clear. When you look at all the roles of those persons involved, the person in this case who is, you know, least culpable, besides the person who didn’t do anything, is the driver, right? That’s what I wanted you to consider. That’s what I was trying to discuss about the different roles and who you would expect to hear from or expect us, you know, to be looking at. That was it. Just examine their roles.
I agree that the statements italicized in the above quotations were an impermissible comment on Gongora’s assertion of his Fifth Amendment rights. However, other of the statements that the panel majority’s opinion concludes “strenuously ... empha *288 sized Gongora’s guilt to the jury based on his failure to testify”[4] do not clearly fall into that category. Those statements are instead the prosecutor’s explanation of who he meant when he asked, “[D]o you want to hear from him[?]” The statement, “I’ll make it very clear. I’m not talking about, do you want to hear from him, because you can’t do that,” does refer to the Gongora’s exercise of his Fifth Amendment rights, but the context of the statement makes clear that the prosecutor, in asking who “do you want to hear from,” was referring to Vargas, Luedtke, and Stephen Gongora, the three people in the van who did not assert their Fifth Amendment rights. Similarly, the final two statements italicized in the majority opinion referred to the occupants of the van who did not assert the Fifth Amendment. It is telling that Gongora’s counsel did not make any objection at trial to these two arguments that the majority opinion says are among five egregious statements. In these final two statements on which the panel majority relies, the prosecutor’s point, while clumsily made, was that the State called Vargas and Luedtke as witnesses. Gongo-ra could have called, but did not call, the only other occupant of the van who did not assert the Fifth Amendment, Gongora’s brother. Gongora’s counsel understood the argument that the prosecutor was making in this regard and did not object.
Gongora argued in his direct appeal to the TCCA that the prosecutor’s comments were unconstitutional, but the state court disagreed. The Texas court reasoned, “When viewed in context, the eomplained-of comments appear to be the prosecutor’s attempt to comment on [Gongora’s] failure to produce witnesses other than [Gongora], which is a permissible area of comment.”[5] The state court acknowledged that the prosecutor’s comments “tended to be inartful and often confusing, leading the trial judge to sustain appellant’s objections to the remarks and to instruct the jury to disregard them.”[6] Nevertheless, the state court concluded that the trial court “did not abuse its discretion in thereafter overruling [Gongora’s] various motions for mistrial.” [7] The court explained that “[o]n this record, the prosecutor’s comments were not so blatant that they rendered the instructions to disregard ineffective,” and the trial judge “reasonably concluded that the instructions to disregard effectively removed any prejudice caused by the prosecutor’s comments.”[8]
On federal habeas review, the district court “concluded that the prosecutor’s remarks concerning Gongora’s failure to testify amount[ed] to constitutional error.”[9] But the district court ultimately held that the constitutional error was harmless. There was no “evidence in the record that [the] remarks ‘had substantial and injurious effect or influence in determining the jury’s verdict’ as required for the granting of federal habeas relief.”[10] The district court also noted that the trial judge had issued several curative and cautionary jury instructions regarding the Fifth Amendment privilege against self-incrimination.[11] *289 Because “[j]uries are presumed to follow their instructions,” the district court concluded, these instructions further mitigated the harm from the comments.[12]
II
Gongora may obtain federal habeas relief on his claim of improper prosecutorial comment only if that constitutional error was not harmless. “[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the ‘substantial and injurious effect’ standard set forth in Brecht [v. Abrahamson ], whether or not the state appellate court recognized the error and reviewed it for harmlessness under ... Chapman [v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) ].”[13] In Brecht, the Supreme Court established the standard that a constitutional error is harmless unless the habeas petitioner shows that it “had substantial and injurious effect or influence in determining the jury’s verdict.”[14]
Gongora has not shown that the constitutional error had substantial and injurious effect or influence in determining the jury’s verdict. The first hurdle that Gon-gora must overcome is the effect of the curative and cautionary jury instructions at Gongora’s trial. I agree with the district court that these instructions mitigated the prejudicial effect of the prosecutor’s comments. The trial judge, in addition to issuing curative instructions during the prosecutor’s closing argument, admonished the jurors several times that they could not and must not consider Gongora’s choice not to testify as evidence of guilt. The judge issued such cautionary instructions at voir dire and again immediately before closing arguments, when it instructed the jury:
In a criminal case the law permits the Defendant to testify in his own behalf but he is not compelled to do so, and the same law provides that the fact that a defendant does not testify shall not be considered as a circumstance against him. You will, therefore, not consider the fact that the Defendant did not testify as a circumstance against him; and you will not during your deliberations allude to, comment on, or in any manner refer to the fact that the Defendant has not testified.
Such jury instructions are “powerful tool[s] ... to protect the [Fifth Amendment] privilege” and give the trial judge a “unique power ... to reduce” speculation “about why a defendant stands mute in the face of a criminal accusation.”[15] Absent a showing to the contrary, we presume that the jury heeded the judge’s instructions.[16] On the basis of the record, and considering the evidence of guilt and the presumptively effective jury instructions, the improper comments did not have a substantial and injurious effect or influence in determining the jury’s verdict.
Gongora confessed in writing that he intended to rob the victim. He confessed *290 in writing that he left the van to rob the victim. Although he said that everyone else in the van also exited to rob the victim, he is the sole person to give that account. The disinterested eye witness who was driving past as the shooting occurred testified that only two men were accosting the victim. In Vargas’s original, subsequently withdrawn, statement to authorities as well as his later statement, he said that only two men exited the van to commit the robbery. The jury unquestionably concluded that Gongora was one of those two men and that one of them was armed with the gun that shot the victim. Gongora admitted that he left the van. The only question was who was the actual shooter. The fact that Gongora may not have pulled the trigger did not absolve him of guilt under the charge given to the jury.
Even were the question before the jury limited to whether Gongora was the shooter, there is no actual prejudice demonstrated on the record before us. For the reasons discussed above, the trial judge’s instructions were adequate.
The evidence that Gongora was not the shooter is not as strong as the majority opinion suggests. The majority opinion makes much of the testimony of Sonia Ramos, a disinterested witness who was driving past as the shooting occurred. She did now know any of the parties involved. She could say only on which side of the victim the shooter stood. The majority opinion says that Ramos’s testimony conflicts with Vargas’s placement of Gon-gora and Orosco. However, it is not at all clear from the record what left or right meant to either Vargas or Ramos in the context of Ramos driving past the scene of the murder at approximately thirty miles an hour and looking back over her shoulder from a vantage point that was different from Vargas’s. More importantly, the record about what Vargas said as to the positioning of Gongora and Orosco comes from a diagram drawn by a detective based on his interview with Vargas. Notably, the original diagram, drawn contemporaneously with the interview, does not show Gongora and Orosco in distinct positions. Instead, the diagram contains arrows pointing from “(Nelson/ Albert)” to two Is marking their position. The detective created the diagram to aid his “own personal understanding” based on his interpretation of Vargas’s recollection of the event. Vargas neither created the diagram nor testified to its accuracy at trial.
In sum, Gongora has not shown that the prosecutor’s violations of the Fifth Amendment substantially influenced the jury’s verdict that he was guilty of capital murder.
Ill
Gongora additionally argues that his sentence of capital punishment violates the Eighth Amendment, as applied to the states pursuant to the Fourteenth Amendment, based upon the Supreme Court’s clearly established holdings in Apprendi v. New Jersey,[17] Ring v. Arizona,[18] and Blakely v. Washington,[19] which Gongora says call into question the continued vitality of Enmund v. Florida,[20] Tison v. Arizona,[21] and Cabana v. Bullock.[22] Gongora *291 contends that the “anti-parties” charge as used in Texas is unconstitutional because the jury was never required to find that he committed capital murder either by his own acts or by his substantial participation in the robbery of the victim with at least reckless indifference to the life of the victim. The jury instructions at the conclusion of the guilt/innocence phase of the trial permitted the jury to find Gongora guilty of capital murder if it found that the murder of the victim during the conspiracy to rob him was an offense that should have been anticipated.[23] During the sentencing phase, the questions submitted permitted the jury to find that Gongora either intended to kill the victim or anticipated that a human life would be taken.[24]
The majority opinion did not reach this issue because of its disposition of the Fifth Amendment question. I nevertheless would deny habeas relief in this case because unless and until the Supreme Court overrules its existing precedent, state courts, including state appellate courts, are permitted to make the finding that the defendant had the mental state required to satisfy the Eighth Amendment’s requirements.[25]
Under Texas law, it is a capital crime to commit murder in the course of attempted robbery.[26] One who did not actually commit the murder may also be convicted of capital murder under Texas law based on the law of parties. By statute, a defendant who did not kill the victim and who did not intend for the murder to occur may nevertheless be convicted of a capital offense if, in an attempt to carry out a conspiracy to commit a felony, the murder “was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.”[27] The instructions to the jury in this case permitted the jury to convict Gongora under these statutory provisions.
Pursuant to Texas’s capital-sentencing scheme, after the jury found Gongora guilty of capital murder, it was required to answer three special issues to determine whether he was eligible for the death penalty.[28] Special issue number two asked the *292 jury to answer the following question: “Do you find from the evidence beyond a reasonable doubt that the Defendant actually caused the death of Delfino Sierra or did not actually cause the death of Delfino Sierra, but intended to kill Delfino Sierra or another or anticipated that a human life would be taken?” Gongora contends that this special issue, combined with the law-of-parties instruction at the guilt/innocence phase of his trial, permitted the jury to sentence him to death on a finding of culpability no greater than that he anticipated a life would be taken, a level of culpability too low to comport with the requirements of Enmund and Tison.
The Supreme Court’s decisions in En-mund and Tison both address the degree of responsibility the Eighth Amendment requires for the imposition of capital punishment after felony-murder convictions. In Enmund, the Supreme Court held that the death penalty cannot be imposed upon a defendant who, though involved in a felony, did not kill, attempt to kill, intend that a killing take place, or anticipate that lethal force would be used.[29] In Tison, the Supreme Court qualified Enmund by holding that “major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the Enmund culpability requirement.”[30]
The Supreme Court has also held that the findings mandated by Enmund and Tison need not be made during trial proceedings.[31] The Supreme Court expressly held that “the Eighth Amendment does not require that a jury make the findings required by Enmund[32] The death penalty may be imposed if “the requisite findings are made in an adequate proceeding before some appropriate tribunal — be it an appellate court, a trial judge, or a jury.”[33] This holding was reaffirmed in Hopkins v. Reeves.[34]
When a federal habeas court reviews a claim that the death penalty has been imposed without the findings mandated by Enmund and Tison,
the court must examine the entire course of the state-court proceedings *293 against the defendant in order to determine whether, at some point in the process, the requisite factual finding as to the defendant’s culpability has been made. If it has, the finding must be presumed correct ..., and unless the habeas petitioner can bear the heavy burden of overcoming the presumption, the court is obliged to hold that the Eighth Amendment as interpreted in Enmund is not offended by the death sentence.[35]
In this case, the TCCA made the requisite finding on direct appeal, stating, “The testimony in the instant case showed that [Gongora] himself exited the van and shot the victim. Thus, he was a major participant in an offense who possessed ‘reckless indifference’ towards the murder.”[36] As a result, the TCCA rejected Gongora’s claim that his death sentence violated the Eighth Amendment.[37]
Pursuant to Cabana, the TCCA was permitted to make the requisite Tison finding that Gongora was a major participant in the robbery who possessed reckless indifference towards the murder.[38] The TCCA made that finding here, and Gongora’s argument that the TCCA unreasonably ignored evidence he believes to be in his favor is not sufficient to overcome the presumption of correctness accorded to the state court’s findings.[39] Under Cabana, Gongora’s death sentence does not violate the Eighth Amendment.
Gongora contends, however, that the Supreme Court’s decisions in Ring v. Arizona[40] and Apprendi v. New Jersey[41] clearly established that only a jury, and not a judge, may make the findings mandated by Enmund and Tison. I do not agree. The Supreme Court has admonished federal courts time and again to construe its holdings narrowly for purposes of federal habeas review, and the Supreme Court “has held on numerous occasions that it is not ‘an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme Court].”[42]
The Enmund, Tison, and Cabana line of cases makes clear that the Eighth Amendment is “a substantive limitation on sentencing, and like other such limits it need not be enforced by the jury.”[43] The Supreme Court’s decision in Cabana ex *294 plained at some length that its “ruling in Enmund does not concern the guilt or innocence of the defendant — it establishes no new elements of the crime of murder that must be found by the jury.”[44] This bears repeating. The limitations that the Enmund decision found to be imposed by the Eighth Amendment do not add elements to a state’s statutory elements of a capital offense. The opinion in Cabana makes the following observations at various junctures:
Enmund “does not affect the state’s definition of any substantive offense, even a capital offense.” Enmund holds only that the principles of proportionality embodied in the Eighth Amendment bar imposition of the death penalty upon a class of persons who may nonetheless be guilty of the crime of capital murder as defined by state law: that is, the class of murderers who did not themselves kill, attempt to kill, or intend to kill.[45] * * *
We are unable to understand Justice BLACKMUN’s statement that we have failed to grasp “the distinction ... between defining an offense and being entitled to execute a defendant.” As stated in the text, we recognize that there is a class of persons whom the State may define as having committed capital murder but whom the State may not permissibly execute. The point we are making, however, is that while the Eighth Amendment prohibits the execution of such defendants, it does not supply a new element of the crime of capital murder that must be found by the jury; hence, such cases as Cole v. Arkansas [333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948) ], which hold that the inadequacy of a jury’s findings on the issue of guilt or innocence may not be corrected by an appellate court, are inapposite.[46]
[T]he decision whether a sentence is so disproportionate as to violate the Eighth Amendment in any particular case, like other questions bearing on whether a criminal defendant’s constitutional rights have been violated, has long been viewed as one that a trial judge or an appellate court is fully competent to make.[47]
Enmund ... imposes a categorical rule: a person who has not in fact killed, attempted to kill, or intended that a killing take place or that lethal force be used may not be sentenced to death. Nonetheless, the rule remains a substantive limitation on sentencing, and like other such limits it need not be enforced by the jury.
Indeed, Enmund does not impose any particular form of procedure upon the States. The Eighth Amendment is satisfied so long as the death penalty is not imposed upon a person ineligible under Enmund for such punishment. If a person sentenced to death in fact killed, attempted to kill, or intended to kill, the Eighth Amendment itself is not violated by his or her execution regardless of who makes the determination of the requisite culpability; by the same token, if a person sentenced to death lacks the requisite culpability, the Eighth Amendment violation can be adequately remedied by any court that has the power to find the facts and vacate the sentence. At what precise point in its criminal process a State chooses to make the *295 Enmund determination is of little concern from the standpoint of the Constitution. The State has considerable freedom to structure its capital sentencing system as it sees fit, for “[a]s the Court has several times made clear, we are unwilling to say that there is any one right way for a State to set up its capital sentencing scheme.”[48]
If a state were to require in a statute the minimum requirements set forth in Enmund and Tison as an element of an offense or as a sentencing factor that could increase the severity of a sentence, then the Sixth Amendment, through the Fourteenth Amendment, would require a jury to find the requisite facts. That is the teaching of the decisions subsequent to Cabana on which Gongora relies.
The actual holdings in Apprendi and Ring were that when a state statute permits punishment to be increased based on the existence of particular facts, a jury must make the factual findings. Although the rationale of Apprendi and Ring calls into question the reasoning in Enmund, Tison, and Cabana, those cases have not been overruled. Nor are the actual holdings in Apprendi and Ring in conflict with the holdings in Enmund, Tison, and Cabana.
In Apprendi a state statute set the maximum penalty for possession of a firearm for unlawful purposes at ten years.[49] However, another statute permitted a judge to impose an “extended term” of imprisonment if the judge found that the defendant had acted to intimidate a person or a group because of race or other enumerated characteristics or beliefs.[50] The Supreme Court held that “any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.”[51] That decision did not consider whether requirements imposed by the Eighth Amendment beyond the statutory elements of the offense or statutory sentencing enhancements must be found by a jury.
The Supreme Court’s decision in Ring extended this principle to the capital-punishment context and overruled Walton v. Arizona[52] in part.[53] In so doing however, the Supreme Court discussed the state court’s Enmund findings,[54] specifically citing Enmund and Tison, but it did not hold that state courts can no longer make such Eighth Amendment findings. The only state court findings at issue in Ring were the trial judge’s finding of one statutory aggravating factor, which was that the of *296 fense was committed in “an especially heinous, cruel or depraved manner.”[55] In framing the issue that was actually decided, the Ring opinion observed that based on the jury’s findings alone, only a life sentence could have been imposed under state law.[56] A death sentence could be imposed under the Arizona statute at issue only if “at least one aggravating factor is found.”[57] The Supreme Court’s actual holding is limited to the issue decided, which was “whether that aggravating factor may be found by the judge, as Arizona law specifies, or whether the Sixth Amendment’s jury trial guarantee ... requires that the aggravating factor determination be entrusted to the jury.”[58] The Court did not address whether the Enmund findings must be made by a jury. The Supreme Court overruled Walton only to the extent that Walton held that statutorily required aggravating factors could be found by a state judge or appellate court.[59]
Neither Ring nor Apprendi — nor any other decision of the Supreme Court — has explicitly overruled Cabana’s holding that a trial judge or appellate court may make the Eighth Amendment findings mandated by Enmund and Tison. The Supreme Court has repeatedly “reaffirm[ed] that ‘[i]f a precedent of [the Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme Court] the prerogative of overruling its own decisions.’- ”[60] Whether the Supreme Court will continue to adhere to the reasoning and holdings of Enmund, Tison, and Cabana is highly questionable. However, because no clearly established holding of the Supreme Court' overruled Cabana’s holding that an appellate court may make the findings mandated by Enmund and Tison, Gongora’s second claim must fail.
In conclusion, I would deny Gongora’s application for a writ of habeas corpus because neither of his claims satisfy the requirements for a grant of the writ.

. Ante at 270.

. Brecht v. Abrahamson, 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)) (internal quotation marks omitted).

. Gongora v. Quartennan, No. 07-70031, 2008 WL 4656992, at *1 (5th Cir. Oct. 22, 2008).

. Ante at 279.

. Gongora v. State, No. AP-74,636, 2006 WL 234987, at *10 (Tex.Crim.App. Feb. 1, 2006) (en banc).

. Id.

. Id.

. Id.

. Gongora v. Quarterman, 498 F.Supp.2d 919, 927 (N.D.Tex.2007).

. Id. (quoting Fry v. Pliler, 551 U.S. 112, 116, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007)).

. Id.

. Id.

. Fry, 551 U.S. at 121-22, 127 S.Ct. 2321 (citations omitted).

. Brecht v. Abrahamson, 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

. Carter v. Kentucky, 450 U.S. 288, 303, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981).

. Zafiro v. United States, 506 U.S. 534, 540-41, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); see also Portuondo v. Agard, 529 U.S. 61, 67, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000) ("It is reasonable enough to expect a jury to comply with [a curative] instruction since, as we observed in Griffin, the inference of guilt from silence is not always 'natural or irresistible.’ ” (quoting Griffin v. California, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965))).

. 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

. 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

. 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

. 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).

. 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987).

. 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986), overruled in part by Pope v. Illi *291 nois, 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987).

. The jury instructions in this case stated, in pertinent part, as follows:
If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, then all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy. Robbery is a felony.

. The issues submitted to the jury at the sentencing phase included "[w]hether the Defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken.”

. See Hopkins v. Reeves, 524 U.S. 88, 100, 118 S.Ct. 1895, 141 L.Ed.2d 76 (1998); Cabana, 474 U.S. at 392, 106 S.Ct. 689.

. The Texas Penal Code provides as follows:
(a) A person commits an offense if the person commits murder as defined under Section 19.02(b)(1) and: ...
(2) the person intentionally commits the murder in the course of committing or attempting to commit kidnaping, burglary, robbery....
Tex. Penal Code Ann. § 19.03(a)(2).

. Tex. Penal Code Ann. § 7.02(b).

. Article 37.071 of the Texas Code of Criminal Procedure provides that the issues submitted to the jury shall include the following:
(1) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
*292 (2) in cases in which the jury charge at the guilt or innocence stage permitted the jury to find the defendant guilty as a party under Sections 7.01 and 7.02, Penal Code, whether the defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken....
[And if the answers to these questions are in the affirmative:]
[(3)] Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed.
Tex.Code Crim. Proc. Ann. art. 37.071(b), (e)(1).

.See Cabana, 474 U.S. at 386, 106 S.Ct. 689 (“Enmund ... imposes a categorical rule: a person who has not in fact killed, attempted to kill, or intended that a killing take place or that lethal force be used may not be sentenced to death.”); see also Enmund v. Florida, 458 U.S. 782, 798, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).

. Tison v. Arizona, 481 U.S. 137, 158, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987).

. See Hopkins v. Reeves, 524 U.S. 88, 100, 118 S.Ct. 1895, 141 L.Ed.2d 76 (1998) (“Ti-son and Enmund do not affect the showing that a State must make at a defendant’s trial for felony murder, so long as their requirement is satisfied at some point thereafter.”).

. Cabana, 474 U.S. at 392, 106 S.Ct. 689.

. Id. (emphasis added).

. See Reeves, 524 U.S. at 100, 118 S.Ct. 1895 (emphasizing that Cabana "held that a State could comply with Enmund's requirement at sentencing or even on appeal”).

. Cabana, 474 U.S. at 387-88, 106 S.Ct. 689 (citation omitted).

. Gongora v. State, No. AP-74,636, 2006 WL 234987, at *12 (Tex.Crim.App. Feb. 1, 2006) (en banc).

. See id. ("Considering the evidence, the fact that the jury was authorized by the charge to convict appellant as a party does not make Article 37.071, section 2(b)(2) unconstitutional as applied to appellant in this case.”).

. See Cabana, 474 U.S. at 387, 106 S.Ct. 689.

. See 28 U.S.C. § 2254(e)(1).

. 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

. 530 U.S. 466, 120 S.Cl. 2348, 147 L.Ed.2d 435 (2000).

. Knowles v. Mirzayance, 556 U.S. 11, 122, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted); see also Wright v. Van Patten, 552 U.S. 120, 125-26, 128 S.Ct. 743, 169 L.Ed.2d 583 (2008) (per curiam) (rejecting petitioner’s claim under § 2254(d)(1) because "[n]o decision of this Court ... squarely addresses the issue in this case” and "[b]ecause our cases give no clear answer to the question presented”); Carey v. Musladin, 549 U.S. 70, 77, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006) (rejecting petitioner's claim "[gjiven the lack of holdings from this Court” on the rule urged).

. Cabana, 474 U.S. at 386, 106 S.Ct. 689.

. Id. al 385, 106 S.Ct. 689.

. Id. (citations omitted).

. Id. at 385 n. 3, 106 S.Ct. 689.

. Id. at 386, 106 S.Ct. 689.

. Id. at 386-87, 106 S.Ct. 689 (quoting Spaziano v. Florida, 468 U.S. 447, 464, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984)).

. Apprendi v. New Jersey, 530 U.S. 466, 468, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

. Id. at 468-69, 120 S.Ct. 2348.

. Id. at 490, 120 S.Ct. 2348 (emphasis added).

. 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990).

. Ring v. Arizona, 536 U.S. 584, 589, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (citing Walton, 497 U.S. 639, 110 S.Ct. 3047).

. Id. at 594, 122 S.Ct. 2428 ("Because Ring was convicted of felony murder, not premeditated murder, the judge recognized that Ring was eligible for the death penalty only if he was Magoch’s actual killer or if he was 'a major participant in the armed robbery that led to the killing and exhibited a reckless disregard or indifference for human life.’ "); id. (explaining that the trial judge "concluded that Ring 'is the one who shot and killed Mr. Magoch’ " and that "[tjhe judge also found that Ring was a major participant in the robbery and that armed robbery 'is unquestionably a crime which carries with it a grave risk of death.' ").

. Id. at 595, 122 S.Ct. 2428 (internal quotation marks omitted).

. Id. at 597, 122 S.Ct. 2428.

. Id. (internal quotation marks omitted).

. Id. (emphasis added).

. See id. at 598-99, 609; id. at 609, 122 S.Ct. 2428 ("[W]e overrule Walton to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty.”).

. Agostini v. Felton, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (second alteration in original) (quoting Rodriguez de Quijos v. Shearson/Am. Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)); see also State Oil Co. v. Khan, 522 U.S. 3, 20, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997) ("[I]t is this Court's prerogative alone to overrule one of its precedents.”).